EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sonnell Transit Service, LLC<br><br>Peticionarios<br><br>v.<br><br>Junta de Subastas del Municipio Autónomo de Toa Baja; Municipio Autónomo de Toa Baja<br><br>Recurridos | Certiorari<br><br>2025 TSPR 85<br><br>216 DPR ___ |

Número del Caso: CC-2024-0650

Fecha: 25 de agosto de 2025

Tribunal de Apelaciones:

    Panel XI

Represes legales de la parte peticionaria:

    Lcdo. Eliezer Aldarondo Ortiz
    Lcdo. Simone Cataldi Malpica
    Lcda. Rosa Campos Silva

Represes legales de la parte recurrida:

    Lcdo. Luis M. Morales Tañón

Materia: Obligaciones y Contratos – Alcance de la Ley de Instituciones de Arrendamiento de Propiedad Mueble en los procesos de contratación gubernamental mediante subasta; efecto de la ausencia del requisito de licenciamiento ante la OCIF en la adjudicación de una subasta municipal sobre arrendamiento mobiliario.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sonnell Transit Service, LLC

      Peticionarios

          v.

                     CC-2024-0650

Junta de Subastas del Municipio Autónomo de Toa Baja; Municipio Autónomo de Toa Baja

      Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 25 de agosto de 2025.

En esta ocasión nos corresponde examinar la validez de la adjudicación de una subasta municipal para el arrendamiento de vehículos destinados al transporte colectivo. Como punto de partida, debemos adentrarnos en un terreno normativo no explorado por nuestra jurisprudencia: el alcance de la Ley de Instituciones de Arrendamiento de Propiedad Mueble, _infra_, en los procesos de contratación gubernamental.

Esta tarea requiere, en primer término, examinar la naturaleza de la prestación contractual subastada, a los fines de dilucidar si se encuentra dentro del tipo de convenio que activa la aplicación del estatuto a las partes licitantes. La respuesta a esta

interrogante determinará la aplicabilidad del requisito de licenciamiento ante la Oficina del Comisionado de Instituciones Financieras ("OCIF") para operar como arrendador de bienes muebles.

En segundo término, debemos auscultar las implicaciones jurídicas de la ausencia de la licencia emitida por la OCIF sobre la adjudicación de una subasta orientada al convenio de arrendamiento mobiliario. Esta coyuntura permite, además, profundizar sobre los lineamientos normativos que rigen el mecanismo de licitación para la contratación gubernamental.

Tras el análisis de rigor, adelantamos que, en el caso de autos, el licitador favorecido tenía la obligación estatutaria de contar con la licencia de la OCIF como condición para destinar sus activos mobiliarios al negocio de arrendamiento. Consecuentemente, resolvemos que la participación de un licitador no autorizado para ejecutar las prestaciones objeto del contrato constituye un vicio insubsanable que acarrea la nulidad de la adjudicación de la subasta y del eventual contrato.

Con este marco introductorio, procedemos a contextualizar el cuadro procesal que dio margen al ejercicio de nuestra facultad revisora.

I

El 3 de mayo de 2024, la Junta de Subastas del Municipio Autónomo de Toa Baja (Junta de Subastas o Municipio de Toa Baja) emitió una invitación para participar de la Subasta Formal Núm. 21-AF-2023-2024, sobre *Arrendamiento de Equipo de Guagua para Movilidad Urbana*. El arrendamiento de los

vehículos se extendería por un periodo de dos años a partir de la contratación.

En lo pertinente, el pliego de especificaciones dispuso que "el licitador deberá incluir con su oferta, según sea requerido en este pliego de subasta formal, aquellas certificaciones o licencias necesarias […] para suplir los bienes, realizar las obras o realizar las prestaciones de servicios considerados en las especificaciones". Ap. del *certiorari*, pág. 47. Más adelante en el pliego, se enumeraron varias licencias y certificaciones requeridas para contratar con el Municipio de Toa Baja. En ningún momento se aludió a la licencia de la OCIF requerida por la Ley de Instituciones de Arrendamiento de Propiedad Mueble, *infra*, para autorizar la operación de un negocio de arrendamiento de propiedad mobiliaria.

Dentro del término establecido en la invitación, las compañías Sonnell Transit Service, LLC (Sonnell) y AMR Trucking & Construction, LLC (AMR Trucking), sometieron sus respectivas propuestas. La oferta de Sonnell fue de $9,977.00, mientras que la de AMR Trucking fue de $8,800.00.

El 2 de agosto de 2024, luego de evaluar las propuestas, la Junta de Subastas notificó a los licitadores que adjudicó la subasta a favor de AMR Trucking. En el documento se hizo constar que en el pasado la empresa favorecida había prestado servicios al Municipio de forma satisfactoria.

Inconforme con la determinación de la Junta de Subastas, Sonnell presentó un recurso de revisión y una moción en auxilio de jurisdicción ante el Tribunal de Apelaciones. En síntesis,

aseveró que la Junta de Subastas debió descalificar a AMR Trucking porque la entidad no contaba con los requisitos de licenciamiento necesarios para comercializar el arrendamiento de sus activos mobiliarios. Asimismo, solicitó que se ordenara la paralización del trámite de formalización del convenio hasta que se adjudicara la controversia. No obstante, el foro intermedio rehusó la concesión del remedio en auxilio de jurisdicción.

Poco después, el Municipio de Toa Baja presentó su oposición al recurso de revisión judicial. Además de defender la adjudicación de la subasta, enfatizó que cumplió con todas las especificaciones incluidas en el pliego de la subasta y que no tenía la obligación de presentar la licencia de la OCIF. Afirmó que este requisito no le aplicaba porque no se requirió en el pliego de especificaciones. Agregó, a su vez, que la subasta versaba sobre un arrendamiento a largo plazo que —a su juicio— no estaba sujeto a regulación legal específica.

Luego de los trámites de rigor, el Tribunal de Apelaciones emitió un dictamen en el que confirmó la adjudicación de la subasta a favor de AMR Trucking. La sentencia del foro intermedio consignó que el pliego de especificaciones de la subasta no exigió expresamente a los proponentes poseer la licencia que expide la OCIF. En sintonía, concluyó que AMR Trucking cumplió con todas las especificaciones para participar del proceso. Sin dirimir el derecho sustantivo atinente a la obligación de licenciamiento, el foro intermedio indicó que la Junta de Subastas tenía la potestad para

solicitar documentos y licencias adicionales al postor agraciado previo a otorgar el contrato.

Nuevamente inconforme, Sonnell acude ante nos mediante el recurso de *certiorari* que nos ocupa. En su comparecencia reproduce los argumentos esbozados en el foro intermedio respecto a la invalidez de adjudicar la buena pro a un licitador que tiene un impedimento legal para suplir o proveer el servicio subastado. Añade que el Tribunal de Apelaciones erró al concluir que el criterio de elegibilidad para licitar se basa exclusivamente en los requisitos descritos en el pliego de especificaciones. Afirma que la entidad gubernamental no tiene la autoridad para rebasar un mandato estatutario.

Por su parte, el Municipio de Toa Baja se reafirma en la validez de la adjudicación a favor de AMR Trucking y en que el contrato de arrendamiento en disputa no está sujeto a la jurisdicción fiscalizadora de la OCIF ni al requisito estatutario de licenciamiento.

Expedido el recurso y con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver la controversia.

II

**A. *Los negocios jurídicos***

El Código Civil de Puerto Rico establece que el contrato es un negocio jurídico bilateral mediante el cual las partes prestan su consentimiento para crear, modificar, regular o extinguir relaciones jurídicas patrimoniales. Art. 1230 del Código Civil, 31 LPRA sec. 9751. A la par, el negocio jurídico se define como "[e]l acto jurídico voluntario lícito que tiene

por fin directo establecer, modificar o extinguir relaciones jurídicas". Art. 268 del Código Civil, 31 LPRA sec. 6121. La norma básica en materia contractual postula que el perfeccionamiento de un contrato está sujeto a que concurran los elementos de consentimiento, objeto y causa. Véase, Pérez Rodríguez v. López Rodríguez *et al.*, 210 DPR 163, 186 (2022).

En lo concerniente, el Art. 269 del Código Civil, 31 LPRA sec. 6131, dispone que "[e]l objeto del negocio jurídico debe ser determinable. No pueden ser objeto del negocio jurídico los hechos de realización imposible, ilícitos, inmorales, contrarios al orden público, a las buenas costumbres, o lesivos de derechos de terceros". En consonancia, se consideran nulos *ab initio* aquellos contratos que tengan como objeto un acto ilícito o imposible. Art. 342 del Código Civil, 31 LPRA sec. 6312.

**B. *Contratación gubernamental mediante subasta***

Por su impacto sobre el erario, la contratación gubernamental para la adquisición de bienes y servicios está revestida de un alto interés público. Mun. Aguada v. W Const. y Recovery Finance, 214 DPR 432 (2024); St. James Sec. v. AEE, 213 DPR 366 (2023); SLG Ortiz-Mateo v. ELA, 211 DPR 772 (2023). El mecanismo de subasta pública ostenta un rol medular en la protección de ese interés. CD Builders v. Mun. Las Piedras, 196 DPR 336, 344 (2016).

Entre los objetivos primordiales de una subasta pública se encuentran evitar el favoritismo, la corrupción, la extravagancia y el descuido al otorgarse un contrato. Íd., págs. 343-344; Empresas Toledo v. Junta de Subastas, 168 DPR

771, 793 (2006). Simultáneamente, se persigue proteger el interés público y maximizar el beneficio para el ente público. Cordero Vélez v. Mun. de Guánica, 170 DPR 237, 245 (2007). La consecución de estos objetivos de transparencia y responsabilidad fiscal exige la aplicación rigurosa de las normas de licitación.

El marco normativo aplicable a estos procedimientos varía en función del tipo de subasta que se pretenda realizar. Existen dos categorías principales: la subasta formal y la subasta informal o requerimiento de propuestas (RFP). De ordinario, el Gobierno adquiere sus bienes y servicios mediante el procedimiento de subasta formal o tradicional. CD Builders v. Mun. Las Piedras, supra, pág. 344; R & B Power v. E.L.A., 170 DPR 606 (2007).

El mecanismo de licitación formal consta de varias etapas: (1) redacción del pliego de condiciones; (2) publicación del aviso de subasta; (3) recibo y apertura pública de propuestas selladas; (4) escrutinio por el comité evaluador; (5) recomendación de adjudicación, y (6) adjudicación y notificación. CD Builders v. Mun. Las Piedras, supra, pág. 344. El proceso exige confidencialidad, prohíbe enmiendas a las propuestas tras su apertura y excluye la negociación entre el licitador y el ente público. Íd., pág. 345; R & B Power v. E.L.A., supra, pág. 621.

Cuando el procedimiento de licitación es promovido por un gobierno municipal, aplican las disposiciones de la Ley Núm. 107-2020, según enmendada, conocida como el Código Municipal de Puerto Rico, 21 LPRA sec. 7001 et seq. Los municipios deben

contar con una junta de subastas para atender y adjudicar todas las subastas requeridas por ley, incluyendo los contratos de arrendamiento de cualquier propiedad mueble e inmueble. Art. 2.040 de la Ley Núm. 107-2020, 21 LPRA sec. 7216. Se dispone, además, que:

> Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. En el caso de ventas o arrendamiento de bienes muebles e inmuebles adjudicará a favor del postor más alto. **La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato**, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta. (Énfasis suplido). Íd.

Cabe destacar que la adjudicación de la subasta no vincula automáticamente al organismo público, ya que este conserva la potestad de revocarla antes de que se perfeccione el contrato. Justiniano v. E.L.A., 100 DPR 334, 338 (1971). Es solo con la formalización del contrato que nace una obligación exigible. Perfect Cleaning v. Cardiovascular, 172 DPR 139, 144 (2007).

En esa misma línea, el *Reglamento para la Administración Municipal de 2016* dispone, sin que se entienda como una limitación, que la Junta de Subastas puede cancelar la adjudicación de una subasta antes de formalizar el contrato: (1) si el municipio ya no tiene la necesidad que originó la subasta; (2) si por alguna causa inesperada e imprevisible se agotan los fondos asignados para la transacción o deban utilizarse para otro propósito, o (3) por otras razones que beneficien el interés público. Parte II, Sec. 14 del Reglamento

para la Administración Municipal de 2016, Reglamento Núm. 8873, Departamento de Estado, 19 de diciembre de 2016, pág. 120.

La discreción que se le confiere a los organismos gubernamentales a la hora de adjudicar subastas ha sido un principio reconocido reiteradamente por nuestra jurisprudencia. Mun. Aguada v. W Const. y Recovery Finance, supra; CD Builders v. Mun. Las Piedras, supra. De ordinario, se entiende que el ente administrativo se encuentra en mejor posición para evaluar a los licitadores y sus propuestas, de acuerdo con los parámetros jurídicos aplicables. Mun. Aguada v. W Const. y Recovery Finance, supra. Esta facultad "se mantiene siempre que se ejerza razonablemente y para fines legítimos del organismo o del interés público". Perfect Cleaning v. Cardiovascular, supra, pág. 148.

A la par, este Tribunal ha expresado que la anulación arbitraria de una subasta formal válidamente celebrada derrota los objetivos de transparencia, competencia efectiva y honestidad en la adquisición de bienes y servicios. CD Builders v. Mun. Las Piedras, supra, pág. 345. La anulación indebida de una subasta puede desalentar la participación de futuros licitadores en procesos de subastas gubernamentales, debido a que promueve la competencia desleal. Íd.

Empero, adjudicarle una subasta a un licitador que no cumplió con los requisitos establecidos en el pliego de especificaciones violaría el orden público. Mun. Aguada v. W Const. y Recovery Finance, supra. El mismo razonamiento se extiende a la adjudicación de una subasta a un licitador que

no cumple con las disposiciones estatutarias esenciales para participar válidamente del proceso. Véase, CD Builders v. Mun. Las Piedras, supra, págs. 346-349.

Establecido el esquema normativo aplicable al procedimiento de contratación gubernamental, debemos ahora examinar los lineamientos estatutarios sobre el arrendamiento de bienes muebles y las obligaciones legales impuestas a quienes destinan sus activos a esta actividad comercial.

### C. Reglamentación del negocio de arrendamiento de bienes muebles

En Puerto Rico, el negocio de arrendamiento de bienes muebles se rige por las disposiciones de la Ley Núm. 76-1994, según enmendada, conocida como la Ley para Regular los Contratos de Arrendamiento de Bienes Muebles, 10 LPRA sec. 2401 nota, et seq.

Según el texto legislativo, la acepción de propiedad mueble abarca aquellos activos que, por su naturaleza, son trasladables y transportables sin menoscabar algún otro objeto al cual se encontraran adheridos. Art. 3(i) de la Ley Núm. 76-1994, 10 LPRA sec. 2401(i). También lo son aquellos bienes que por ley se definan como muebles y constituyan el objeto del arrendamiento. Íd. No obstante, de esta definición, "[s]e excluyen los bienes cedidos en arrendamiento por un término menor de un (1) año y aquellos sin término fijo". Íd.

En sintonía, la ley reconoce que el contrato de arrendamiento de propiedad mobiliaria puede presentarse en distintas modalidades, entre ellas: arrendamiento financiero; arrendamiento financiero abierto; arrendamiento cerrado;

arrendamiento operativo, y arrendamiento de consumo. Art. 3(c)-(g) de la Ley Núm. 76-1994, 10 LPRA sec. 2401(c)-(g).

Según el Art. 3(c), supra, un arrendamiento financiero es aquel que satisface al menos uno de los requisitos siguientes:

> (1) Si en el contrato de arrendamiento se transfiere la titularidad de la propiedad al arrendatario al finalizar el término del arrendamiento.
> (2) Si el contrato de arrendamiento contiene una opción de compra a un valor sustancialmente menor que el justo valor en el mercado al momento de ejercerse la opción.
> (3) Si el término del contrato de arrendamiento es igual o mayor al setenta y cinco (75) por ciento de la vida útil del bien arrendado.
> (4) Si el valor presente de los pagos mínimos en el contrato de arrendamiento, excluyendo gastos administrativos, es igual o mayor que el noventa (90) por ciento del justo valor en el mercado del bien arrendado.

En cambio, cuando un arrendamiento mobiliario no satisface ninguno de los requisitos previamente enumerados, la ley lo clasifica como un arrendamiento operacional. Art. 3(f) de la Ley Núm. 76-1994, 10 LPRA sec. 2401(f). Su existencia se define por exclusión; o sea, un arrendamiento operacional es cualquier arrendamiento de bienes muebles que no tiene los elementos de un arrendamiento financiero o de un arrendamiento con opción a compra. Íd.

Por su parte, el arrendamiento cerrado es aquel que no supone ninguna responsabilidad para el arrendatario al momento de concluir el contrato, salvo por el menoscabo del bien. Art. 3(e) de la Ley Núm. 76-1994, 10 LPRA sec. 2401(e). En cambio, el arrendamiento financiero abierto es aquel donde se establece un valor residual que debe pagar el arrendatario. Art. 3(d) de la Ley Núm. 76-1994, 10 LPRA sec. 2401(d). Finalmente, la ley contempla una modalidad de arrendamiento de

consumo caracterizada por el uso personal o familiar de la propiedad mueble. Art. 3(g) de la Ley Núm. 76-1994, 10 LPRA sec. 2401(g).

Si bien la Ley Núm. 76-1994 regula la relación contractual entre el arrendador y el arrendatario, su texto no se extiende a la supervisión de las entidades que se dedican a arrendar propiedad mueble. El asunto de la fiscalización de entidades dedicadas al arrendamiento de bienes muebles lo atiende la Ley Núm. 20 de 8 de mayo de 1973, según enmendada, conocida como la Ley de Instituciones de Arrendamiento de Propiedad Mueble, 10 LPRA sec. 996 *et seq*. Esta le impone a las personas naturales o jurídicas que se dedican al arrendamiento de bienes muebles la obligación de registrarse y poseer una licencia de la OCIF, así como de suministrar cierta información, previo a operar su negocio. Art. 3 de la Ley Núm. 20, supra, 10 LPRA sec. 996b. En concreto, el núcleo normativo de la pieza legislativa estatuye que:

> **[n]inguna persona se dedicará en forma directa o indirecta al negocio de arrendamiento de propiedad mueble en el Estado Libre Asociado de Puerto Rico sin obtener previamente una licencia expedida por el Comisionado [de Instituciones Financieras]** como se dispone más adelante, exceptuando aquellas personas o entidades cuyos activos dedicados al negociado de arrendamiento de propiedad mueble tengan un valor menor de diez mil (10,000) dólares o que se dedican exclusivamente a suscribir contratos de arrendamiento de propiedad mueble por términos menores de un (1) año. (Negrillas suplidas). Íd.

Del texto citado, se aprecia que la regla general de posesión de licencia contempla solo dos excepciones. Íd. A esos efectos, están exentos de la regulación los negocios de arrendamiento en los cuales el valor del bien mueble no alcance

los $10,000 y aquellos que se dedican exclusivamente a arrendamientos por términos menores de un año. Íd.

En la Exposición de Motivos, la Asamblea Legislativa reiteró que el arrendamiento de propiedad mobiliaria, como modalidad de negocio, es una actividad de alta relevancia para el desarrollo de la economía porque "permite el uso, por parte de la industria y el comercio, entre otras cosas, de vehículos, camiones y toda clase de equipo, sin que las empresas tengan que atar las sustanciales cantidades de dinero que tendrían que invertir para su compra". Exposición de Motivos de la Ley Núm. 20, supra. Sobre este elemento, la Asamblea Legislativa aseveró que **"[p]odría decirse que ello constituye una forma indirecta de financiamiento"**. (Negrillas suplidas). Íd.

Cabe destacar que, desde su aprobación, la Ley Núm. 20, supra, ha sido enmendada en cuatro ocasiones. En lo pertinente, la Ley Núm. 65-1994 introdujo una de las excepciones al requisito de licencia antes discutido. En particular, la enmienda excluyó a los arrendamientos de corta duración —menores de un año— de la aplicación de la ley. Íd. En ese entonces, la Asamblea Legislativa explicó que la enmienda respondía a que la amplitud del lenguaje estatutario sujetaba a las industrias de arrendamiento vehicular a corto plazo (*car rentals*) a la jurisdicción de la OCIF. Sin embargo, ese tipo de arrendamiento no podía ser un mecanismo indirecto de financiamiento porque era de corta duración y se otorgaba para satisfacer necesidades ocasionales. Íd. Vale señalar que, desde que se introdujo esa enmienda, el texto del Art. 3, supra, que nos atañe se ha mantenido inalterado.

Con el esquema doctrinal debidamente establecido procedemos a adjudicar el caso de autos.

III

En la controversia que nos ocupa, Sonnell arguye que AMR Trucking no posee la habilidad legal para dedicarse al negocio de arrendamiento de bienes muebles, pues carece de la licencia de la OCIF. En consecuencia, afirma que la ausencia de licencia representaba un impedimento jurídico para que AMR pudiera licitar en la subasta que aquí se impugna, dado que su elegibilidad como licitador estaba inexorablemente vinculada a su autoridad legal para contratar el negocio subastado. Le asiste la razón.

La obligación de licenciamiento que emerge del Art. 3 de la Ley Núm. 20, supra, se erige como un requisito de aplicación general indispensable para ejercer legalmente el negocio de arrendamiento de bienes muebles en Puerto Rico. De forma concluyente, el texto enuncia que nadie puede dedicarse a este negocio "sin obtener **previamente** una licencia expedida por el Comisionado". (Negrillas suplidas). Art. 3 de la Ley Núm. 20, supra. Resulta evidente, entonces, que al proveer que "ninguna persona" puede actuar sin licencia, se establece la prohibición de la actividad en ausencia de licencia.

Las excepciones a esta regla general están claramente delimitadas en la ley. Contrario a lo argumentado por la Junta de Subastas, el análisis sobre el ámbito de aplicación de la ley no se ve alterado por el hecho de que el contrato de arrendamiento no esté dirigido a la adquisición del bien mueble al finalizar el plazo del arrendamiento. En el caso de autos,

el negocio objeto de la subasta no cae dentro de los escenarios excepcionales contemplados en el Art. 3 de la Ley Núm. 20, supra. Esto se debe a que los activos destinados al arrendamiento son vehículos de transporte colectivo, cuyo valor excede considerablemente el umbral de $10,000 y que el plazo de vigencia del negocio se extiende a dos años. Así, pues, no satisface ninguno de los supuestos excepcionales.

En una línea similar, tampoco es correcto el argumento de que la Ley Núm. 20, supra, regula exclusivamente los arrendamientos financieros y que los arrendamientos a largo plazo no están sujetos a la regulación. Eso no es lo que establece el texto normativo en discusión. El criterio rector para la aplicación del estatuto es el ejercicio del negocio independientemente del contenido de sus cláusulas o la modalidad del contrato. El asunto de las formalidades y el contenido de las cláusulas contractuales es atendido por la Ley Núm. 76, supra. Esta reconoce y clasifica múltiples modalidades de arrendamiento a largo plazo no necesariamente comprendidas en la categoría de arrendamientos financieros.

Por el contrario, la Ley Núm. 20, supra, regula una industria o actividad comercial y no un contrato en particular. El uso de frases como "dedicarse al negocio", "forma directa o indirecta" y "valores de activos", en lugar de "tipo de cláusula" o "modalidad financiera", sustenta esta postura. Art. 3 de la Ley Núm. 20, supra. Por tanto, el criterio es objetivo: todo arrendamiento mobiliario que supere el plazo de un año y cuyo activo alcance el valor de $10,000 está sujeto a licenciamiento. Ante la claridad del texto, no estamos en

posición de establecer excepciones o limitaciones no contempladas en la ley.

En vista de ello, es ineludible concluir que AMR Trucking tenía la obligación estatutaria de poseer una licencia de la OCIF como condición para dedicarse al arrendamiento de bienes muebles. Al no poseer la licencia, estaba vedada de ejecutar el negocio.

Aclarado este extremo, nos corresponde ahora analizar las implicaciones de la ausencia de licencia sobre la adjudicación de la subasta municipal a favor de AMR Trucking. Sobre este aspecto, el Tribunal de Apelaciones coligió que la carencia de licencia no invalidaba la adjudicación de la subasta, pues el municipio conservaba la potestad para solicitar este y otros documentos al momento de contratar. Se equivoca.

Lo primero que debemos tener presente es que, la obligación estatuida en el Art. 3 de la Ley Núm. 20, supra, impone un mandato *ex ante*. Es decir, el trámite de licenciamiento ante la OCIF se perfila como un requisito previo al desarrollo de la actividad comercial de arrendamiento mobiliario. Sencillamente, nadie puede dedicarse a esta actividad sin obtener previamente la licencia en cuestión.

Por implicación lógica, no se puede considerar como licitador elegible a quien tiene un impedimento legal para convenir sobre el negocio subastado. En lo jurídico, el caso de autos nos enfrenta con un escenario de nulidad contractual por imposibilidad del objeto. Cuando el postor favorecido no puede ejecutar lícitamente el objeto del contrato, conforme al principio general de que el objeto debe ser lícito y posible,

se entiende que el pacto es nulo *ab initio*. Art. 269 del Código Civil, <u>supra</u>. En este caso, el objeto del pacto, a saber, el arrendamiento de activos mobiliarios era un negocio que AMR Trucking no podía ejercer lícitamente. De ahí que la Junta de Subastas no puede considerar válida una propuesta de servicios cuando el licitador está vedado de ejecutarlos.

La omisión de requerir la licencia expresamente en el pliego de especificaciones no subsana la inhabilidad legal del licitador para contratar. **El proceso de subasta no puede utilizarse para convalidar actos que el ordenamiento prohíbe**.

Las subastas están sujetas al principio de estricta legalidad. Según expresamos en el acápite anterior, el alto interés público que revisten los procesos que conllevan erogación de fondos del Gobierno exige cumplimiento riguroso con la normativa aplicable. En esa tesitura, adjudicar una buena pro a un licitador no autorizado legalmente constituye un acto nulo por violar el orden público.

Como corolario, al momento de evaluar una oferta, la Junta de Subastas debe cerciorarse de que el licitador posea la facultad legal para ejecutar las prestaciones contractuales objeto de la subasta. Recordemos que, según el Código Municipal de 2020, al examinar una propuesta, la Junta de Subastas debe considerar, entre otros elementos, el cumplimiento con las especificaciones y la habilidad del postor para realizar y cumplir con el contrato. Art. 2.040(a) de la Ley Núm. 107-2020, <u>supra</u>.

Este análisis requiere la presentación y verificación de toda licencia indispensable para acreditar la aptitud jurídica

del postor. Por extensión, la Junta de Subastas tiene el deber de mantenerse informada sobre los requisitos estatutarios mínimos para el perfeccionamiento del contrato objeto de una subasta. Ahora bien, aunque la mejor práctica es que se incluyan expresamente en el pliego de especificaciones, los requisitos de licenciamiento operan por fuerza de ley. Es por eso que, según se mencionara previamente, la omisión en el pliego no ratifica el vicio jurídico que acarrea su incumplimiento.

Permitir la participación de personas que no cuentan con la autorización del Gobierno para dedicarse a cierto negocio atenta contra el interés público, afecta la transparencia que debe regir estos procesos y se presta para ofrecer ventajas indebidas a un licitador. A la luz de lo anterior, y ante la inhabilidad legal de AMR Trucking, resolvemos que la adjudicación de Subasta Formal Núm. 21-AF-2023-2024 es nula.

IV

Por los fundamentos que anteceden, se revoca la sentencia del Tribunal de Apelaciones y se deja sin efecto la adjudicación de la Subasta Formal Núm. 21-AF-2023-2024. En consecuencia, se devuelve el procedimiento a la Junta de Subastas para que, en el ejercicio de su discreción administrativa, adjudique la subasta conforme proceda en derecho.

Se dictará Sentencia en conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sonnell Transit Service, LLC

    Peticionarios

        v.

Junta de Subastas del Municipio Autónomo de Toa Baja; Municipio Autónomo de Toa Baja

    Recurridos

CC-2024-0650

SENTENCIA

En San Juan, Puerto Rico, a 25 de agosto de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la sentencia del Tribunal de Apelaciones y se deja sin efecto la adjudicación de la Subasta Formal Núm. 21-AF-2023-2024. En consecuencia, se devuelve el procedimiento a la Junta de Subastas para que, en el ejercicio de su discreción administrativa, adjudique la subasta conforme proceda en derecho.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Perez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo