Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ALMA R. CAÑUELAS LEÓN<br><br>Apelada<br><br>v.<br><br>VALERIE NICOLE RIVERA FONTÁNEZ y JUAN MELÉNDEZ CORTÉS<br><br>Apelantes | TA2025AP00283 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil núm.: SJ2023CV00293 (502)<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de noviembre de 2025.

Comparece ante este tribunal apelativo, la Sra. Valerie Nicole Rivera Fontánez y el Sr. Juan Manuel Meléndez Cortés (en conjunto, los apelantes) mediante el recurso de apelación de epígrafe solicitándonos que revoquemos la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (el TPI), el 1 de julio de 2025, notificada al día siguiente. Mediante dicho dictamen, el foro primario declaró *Ha Lugar* a la demanda instada por la Sra. Alma R. Cañuelas León (señora Cañuelas León o apelada). En consecuencia, ordenó a los apelantes a pagar $100,000 a la apelada, más las costas y gastos del litigio. Asimismo, les impuso a estos el pago de $2,000 en honorarios de abogado por temeridad y el 8.75% de intereses legales.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El 17 de enero de 2023, la señora Cañuelas León instó una demanda sobre cobro de dinero en contra de los apelantes. En

esencia, adujo que para junio de 2021 ofreció a su sobrina, Sra. Valerie Nicole Rivera Fontánez (Valerie), ayudarle económicamente, otorgándole en calidad de préstamo, el dinero necesario para el depósito inicial para adquirir un bien inmueble. Ello, para que esta pudiera establecer su residencia más cerca a la escuela de sus hijas menores y de su lugar de trabajo. Indicó que, una vez Valerie identificó el inmueble a comprar, le solicitó a la apelada $65,000, en calidad de préstamo, suma que corresponde al depósito inicial. La señora Cañuelas León accedió y emitió el cheque número 195 el 6 de agosto de 2021, de su cuenta personal del Banco Popular de Puerto Rico. Expresó que, a solicitud de Valerie se conceptualizó como donación, para no afectar su capacidad financiera en la obtención del préstamo hipotecario para el resto del importe de la propiedad a adquirir.

Agregó que la primera propiedad identificada no se pudo comprar, y los apelantes identificaron otra, cuyo valor de venta era superior a la anterior. Por lo que, estos le pidieron dinero nuevamente a la apelada quien, de manera similar a su previo proceder, el 23 de septiembre de 2021, giró a favor de los apelantes el cheque número 196. Además, arguyó que no se realizó la compraventa para la segunda propiedad y transcurrido un año de haberle prestado a Valerie los $100,000, los apelantes no respondieron a los reclamos para la devolución del dinero.

Por tanto, especificó que la deuda de $100,000 está vencida y es una líquida y exigible. Así pues, le solicitó al TPI que ordenara el pago de la cantidad debida.

El 27 de abril de 2025,[1] los apelantes presentaron la contestación a la demanda en la que aceptan haber recibido el

---

[1] El 29 de enero de 2025 los apelantes habían presentado una *Réplica a Demanda,* pero instaron esta contestación en cumplimiento de la Orden emitida el 21 de marzo de 2025 por el TPI.

dinero, pero no en calidad de préstamo sino de regalo en base de una donación que le realizó la señora Cañuelas León a su sobrina, Valerie. Estos expusieron que en los cheques que la propia apelada presentó como evidencia, esta dispuso que se entregaba como una donación o regalo. Más aún, señalaron que fue la apelada quien se ofreció voluntariamente a ayudar a Valerie.

Luego de varios trámites procesales, el 25 de febrero de 2025, se celebró el juicio en su fondo. De la *Minuta* surge que la prueba testifical presentada por la parte apelante consistió en los testimonios de ellos. Por su parte, la señora Cañuelas León presentó su propio testimonio y como testigos a la Sra. Heyda J. Cintrón Vélez (Corredora) y al Lcdo. Eduardo Joglar Castillo.

Asimismo, del dictamen apelado surge que se estipuló y admitió la siguiente prueba documental:

> Exhibit 1 Cheque número 195 por la cantidad de $65,000.00 firmado por la demandante
> Exhibit 2 Cheque número 196 por la cantidad de $35,000.00 firmado por la demandante

Así, aquilatada la prueba documental y testifical, el 1 de julio de 2025, el TPI emitió la *Sentencia* impugnada en la que formuló treinta y tres (33) determinaciones de hechos.[2] A base de estos, declaró *HA LUGAR* a la demanda. En consecuencia, ordenó a los apelantes a pagar $100,000 a la señora Cañuelas León, más las costas y gastos del litigio. Asimismo, les impuso el pago de $2,000 en honorarios de abogado por temeridad y el 8.75% de intereses legales. El dictamen fue notificado al día siguiente.

A su vez, el foro primario razonó que:

> En el presente caso, luego de aquilatar cuidadosamente la prueba presentada en su totalidad, es forzoso concluir que el contrato verbal realizado entre la demandante y los demandados fue uno de préstamo. Surge del testimonio de la demandante y de sus testigos, cuyos testimonios le merecieron credibilidad al Tribunal, que las partes convinieron que la demandante escribiera en los cheques la palabra

---

[2] Véase, el Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI, Entrada núm. 109, a las págs. 3-6.

"donación" para que los demandados pudieran cualificar para la compra de la propiedad. En todo momento, los demandados estuvieron conscientes de que a pesar de que los cheques decían "donación", en realidad se trataba de un préstamo que les hizo la demandante. La propia codemandada Rivera Fontánez le solicitó a la demandante que lo hiciera de esa manera para ayudarles con el financiamiento de la propiedad. Además, en una ocasión la codemandada Rivera Fontánez, le confirmó a la testigo, señora Cintrón Vélez, que la demandante le había prestado un dinero para la compra de la propiedad. Asimismo, aunque no se estableció un plazo específico, las partes acordaron que los demandados debían devolver el total de $100,000.00 con lo que se les iba a descontar paulatinamente de sus salarios en el laboratorio. Sin embargo, luego de recibir el préstamo ambos demandados renunciaron a sus empleos en el laboratorio de la demandante y no volvieron a comunicarse con ella.

La demandante intentó en varias ocasiones tener comunicación con los demandados para requerirles el pago del dinero prestado, sin obtener resultados porque estos no le contestaban las llamadas. Incluso, la demandante, ante la falta de comunicación con los demandados, solicitó al conocido mutuo, licenciado Joglar Castillo, que los llamara para solicitarles amistosamente el pago de lo adeudado. Aun cuando la codemandada Rivera Fontánez contestó la llamada realizada por el abogado, y a pesar de haberle dicho que estaba consciente del dinero que le debía a su tía, solamente le indicó que debía hablar con su esposo y le devolvería la llamada, algo que nunca hizo.

Es menester señalar el codemandado Meléndez Cortés, admitió durante su testimonio directo -a las preguntas iniciales de su representación legal- que la demandante les prestó un dinero a él y a su esposa. Ello a pesar de que luego intentó decir que el dinero les fue prestado como donación, aspecto que no le mereció credibilidad al Tribunal, como tampoco nos mereció credibilidad el testimonio de la codemandada Rivera Fontánez.

De conformidad con los hechos antes reseñados, resulta forzoso concluir que, en el presente caso, a pesar de que los cheques entregados a los demandados tenían la palabra "donación", la intención de las partes y el acuerdo verbal entre éstos fue constitutivo de un contrato de préstamo. La demandante accedió a los requerimientos de su sobrina, por su relación de familia a fin de ayudarla a ella y su esposo en la obtención del financiamiento para adquirir la propiedad, por lo que corresponde que la parte demandada pague el dinero que le fue prestado.

Inconformes, los apelantes instaron oportuna reconsideración, la cual fue denegada mediante una Resolución Interlocutoria emitida el 23 de julio de 2025, notificada al día siguiente.

Todavía en desacuerdo, los apelantes acuden ante este foro revisor imputándole al TPI haber incurrido en los siguientes errores:

ERRÓ EL TRIBUNAL DE INSTANCIA AL CONCLUIR QUE LOS CHEQUES REPRESENTABAN UN PRÉSTAMO, CUANDO EL TEXTO DE LOS MISMOS EXPRESABA QUE ERAN UNA DONACIÓN.

ERRÓ EL TRIBUNAL AL BASAR SU FALLO EN TESTIMONIOS INDIRECTOS Y DE REFERENCIA, EN VIOLACIÓN A LAS REGLAS DE EVIDENCIA.

ERRÓ EL TRIBUNAL AL SUPLIR ELEMENTOS ESENCIALES DE UN CONTRATO VERBAL DE PRÉSTAMO (CONSENTIMIENTO, OBJETO Y CAUSA) SIN PRUEBA CLARA Y CONVINCENTE.

ERRÓ EL TRIBUNAL AL DESESTIMAR LA PRUEBA DOCUMENTAL Y LA CARTA FIRMADA POR LA DEMANDANTE DONDE RECONOCÍA QUE LOS FONDOS ENTREGADOS CONSTITUÍAN UN REGALO.

ERRÓ EL TRIBUNAL AL IMPONER HONORARIOS POR TEMERIDAD, A PESAR DE LA EXISTENCIA DE UNA CONTROVERSIA GENUINA Y DEBATIBLE.

El 28 de agosto de 2025, emitimos una *Resolución* en la que concedimos a los apelantes el término de diez (10) días para acreditar, conforme lo dispuesto en la Regla 76 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, a la pág. 103-106, 215 DPR __ (2025), si para la atención de los errores señalados es necesaria la reproducción de la prueba oral desfilada durante el juicio. Asimismo, le especificamos que, de entenderla necesaria, deberá indicar el método que utilizará para dicha reproducción.

Ante el incumplimiento con lo antes ordenado, el 23 de septiembre de 2025, emitimos una *Resolución* en la que le **decretamos que interpretamos que los apelantes consideran que no es necesaria la reproducción de la prueba oral**. A su vez, le concedimos a la parte apelada el término de treinta (30) días para expresarse. El 3 de noviembre de 2025, la señora Cañuelas León presentó un escrito intitulado *Moción en Cumplimiento de Orden o Resolución,* por lo que nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

### Teoría General de los Contratos

En nuestro ordenamiento jurídico son fuente de obligación la ley, **los contratos**, los cuasicontratos, los actos ilícitos, los actos u omisiones en los que interviene culpa o negligencia y cualquier acto idóneo para producirlas conforme a los establecido bajo el estado de derecho. Artículo 1063 del Código Civil de 2020, 31 LPRA sec. 8984. Los contratos existen desde que una o varias personas expresan su consentimiento para obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio por las formas previstas en ley. Artículo 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Un contrato se perfecciona cuando las partes consienten sobre el objeto y la causa específica a las que se obligan. Artículo 1237 del Código Civil de 2020, 31 LPRA sec. 9771. *Sonnell Transit Serv. v. Junta de Subasta*, 2025 TSPR 85, 216 DPR ___ (2025).

En este sentido, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Artículo 1238 del Código Civil de 2020, 31 LPRA sec. 9772. El objeto, por su parte, debe ser determinable. No pueden ser objeto del negocio jurídico los hechos de realización imposible, ilícitos, inmorales, contrarios al orden público, a las buenas costumbres, o lesivos de derechos de terceros. Artículo 269 del Código Civil de 2020, 31 LPRA sec. 6131. *Sonnell Transit Serv. v. Junta de Subasta*, supra. Mientras que, en esencia, la causa es el fin que motiva la contratación y que se presumirá lícita, aunque no esté expresada. Artículo 271 del Código Civil de 2020, 31 LPRA sec. 6142.

Es decir, que son elementos esenciales del contrato el consentimiento, objeto y causa. Siempre que concurran estas tres

condiciones para su validez, el acuerdo entre las partes se hace obligatorio. *Sonnell Transit Serv. v. Junta de Subasta*, supra; *Cruz López v. Casa Bella y otros*, 213 DPR 980, 995 (2024). Por tanto, lo acordado tiene fuerza de ley entre las partes. Artículo 1233 del Código Civil de 2020, 31 LPRA sec. 9754. Sin embargo, es menester puntualizar que, tras su perfeccionamiento, las partes no solo se obligan a su cumplimiento, sino también a sus consecuencias.

Por otro lado, nuestro ordenamiento jurídico, como regla general, establece que los negocios jurídicos -incluidos los contratos- son de libre forma a excepción de que la ley imponga una forma determinada para su validez, o que así lo convengan entre las partes. Artículo 277 del Código Civil de 2020, 31 LPRA sec. 6161. Es decir que, cuando no se conviene entre los contratantes y la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente. **Ante la ausencia de un requisito de forma, el acuerdo entre las partes puede ser escrito o verbal. El contrato o acuerdo verbal tiene la misma fuerza vinculante que un contrato escrito.**

**La apreciación de la prueba y el estándar de revisión apelativa**

Nuestro más alto foro ha establecido claramente que los foros apelativos solo intervendrán con la apreciación de la prueba que haga el foro de instancia, cuando se demuestre que la intervención del juzgador sobre los hechos en controversia se encuentra viciada por pasión, prejuicio, parcialidad o error manifiesto. *Colón v. Lotería*, 167 DPR 625, 659 (2006); *Colón v. Glamorous Nails*, 167 DPR 33, 59 (2006); *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006); *SLG Giovanetti v. ELA*, 161 DPR 492, 518 (2004); *Trinidad v. Chade*, 153 DPR 280, 291 (2001). Esto implica que los tribunales apelativos deben rendir deferencia a la apreciación de la prueba que realiza un tribunal de instancia. *McConnell v. Palau*, 161 DPR 734, 750 (2004).

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones ponderadas del foro de instancia. *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999). Esto porque, los juzgadores de primera instancia se encuentran en mejor posición de aquilatar la prueba testifical, observar el comportamiento de los testigos mientras declaran y adjudicar la credibilidad que merezcan. *Argüello v. Argüello,* 155 DPR 62, 79 (2001); *Orta v. Padilla,* 137 DPR 927, 937 (1995); *Monllor v. Soc. de Gananciales,* 138 DPR 600, 610 (1995).

Sobre el particular, las Reglas de Procedimiento Civil disponen que las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto, a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Regla 42.2, de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. Esto porque, al evaluar la prueba oral, el juzgador de instancia tiene que ponderar integradamente los siguientes aspectos: (1) el comportamiento del testigo mientras declara y la forma en que lo hace; (2) la naturaleza o carácter del testimonio; (3) el grado de capacidad del testigo para percibir, recordar o comunicar cualquier asunto sobre el cual declara; (4) declaraciones anteriores de la persona testigo; (5) existencia o inexistencia de cualquier prejuicio, interés u otro motivo de parcialidad por parte de la persona testigo; (6) existencia o inexistencia, falsedad, ambigüedad o imprecisión de un hecho declarado por la persona testigo y; (7) carácter o conducta de la persona testigo en cuanto a veracidad o mendacidad. Regla 608, inciso (B) (1-7) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 608.

En ese sentido, si al evaluar las transcripciones de la prueba oral, la naturaleza de los testimonios es creíble y los mismos no

reflejan contradicciones, el foro apelativo no podrá sustituir el criterio del foro de instancia con el suyo propio.

Como corolario de lo anterior, cuando la parte apelante señale algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de esta por parte del tribunal apelado, deberá reproducir la prueba oral conforme a la Regla 76. Regla 19 del Reglamento del Tribunal de Apelaciones, *supra,* a la pág. 37. Asimismo, la Regla 76 dispone que, de proponerse reproducir la prueba oral que desfiló ante el foro recurrido, someterá una transcripción o una exposición narrativa estipulada. Regla 76 del Reglamento del Tribunal de Apelaciones, *supra*, a las págs. 103-106. El Tribunal de Apelaciones depende de la reproducción de la prueba oral para poder dirimir si erró o no el foro de primera instancia en sus determinaciones de hechos.

**La temeridad**

La Regla 44.1 (d) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), establece que en un caso ante el Tribunal de Primera Instancia en que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

El Tribunal Supremo ha definido el concepto de temeridad como aquella conducta que promueve un pleito que se pudo obviar, lo prolonga innecesariamente, o que obliga a una parte a involucrarse en trámites evitables. Dicho de otro modo, se entiende que un litigante actúa con temeridad cuando por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Maderas Tratadas v. Sun Alliance et al.,* 185 DPR 880, 925-926 (2012). Esta

penalidad tiene como propósito disuadir la litigación frívola; así como fomentar las transacciones, a través de sanciones que compensen a la parte victoriosa de los perjuicios económicos y las molestias ocasionadas por la temeridad desplegada por otra parte en el caso. *Íd.*, a la pág. 926.

La evaluación de si ha mediado o no temeridad, recae sobre la sana discreción del tribunal sentenciador y solo se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. Sin embargo, una vez fijada la existencia de temeridad, la imposición del pago de honorarios de abogado es mandatoria. *Íd.* La cuantía se mide en virtud de: (1) el grado de temeridad que ha existido; (2) la naturaleza del procedimiento; (3) los esfuerzos y la actividad profesional que haya tenido que desplegarse; y (4) la habilidad y reputación de los abogados. *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 738-739 (1990).

### III.

Los apelantes señalaron que el TPI erró al concluir que los cheques representaban un préstamo, a pesar de que en estos se expresaba que eran una donación. Además, expusieron que erró el foro primario al basar su fallo en testimonios indirectos y de referencia, en violación a las Reglas de Evidencia. A su vez, indicaron que erró el tribunal al suplir elementos esenciales de un contrato verbal de préstamo (consentimiento, objeto y causa) sin prueba clara y convincente. De igual manera, adujeron que incidió el tribunal apelado al desestimar la prueba documental y la carta firmada por la demandante donde reconocía que los fondos entregados constituían un regalo. Por último, argumentaron que se actuó incorrectamente al imponer honorarios por temeridad, a pesar de la existencia de una controversia genuina y debatible.

De entrada, advertimos que los apelantes, a pesar de que le dimos la oportunidad de acreditar si para la atención de los errores

señalados, sería necesaria la reproducción de la prueba oral desfilada durante el juicio en su fondo, estos no cumplieron con lo ordenado. Por lo que, decretamos que interpretamos que ellos consideran que no es necesaria la reproducción de la prueba oral.

Según reseñamos en el derecho que precede, este tribunal depende de la reproducción de la prueba oral para poder dirimir si erró o no el foro de primera instancia en sus determinaciones de hechos. Sin esta, quedamos impedidos de ejercer nuestra función revisora y pasar juicio sobre la evaluación de la prueba oral que realizó el foro primario y/o intervenir con la apreciación de la prueba y adjudicación de credibilidad de los testimonios vertidos en el juicio realizadas por el tribunal.

Por tanto, estamos impedidos de atender algunos de los planteamientos incluidos por los apelantes en el recurso respecto a que:

- El TPI "no encontró, ni podía encontrar, que "apareciera claramente" una voluntad distinta a la expresada en los cheques: "DONACIÓN". Por el contrario, intentó inferir una voluntad contraria a través de testimonios orales, lo que constituye un error de derecho.
- El Tribunal cometió un error de hecho sustancial al no otorgar peso decisivo al Anejo 1 de los apelados: una carta firmada por la propia apelante en junio de 2020 (un año antes de los cheques) donde certifica su intención de "give a gift" por la cantidad de $85,000.00. Este documento es una declaración contra el interés de la apelante, otorgada de forma espontánea y previa, que establece de manera incontrovertible su *animus donandi*.
- El Tribunal validó un contrato de préstamo de $100,000 basado únicamente en la palabra de una parte, a pesar de que la otra parte presentó dos documentos (cheques) y una carta que decían exactamente lo contrario.
- El TPI invirtió la carga de la prueba. Correspondía a la demandante-[apelada] probar los elementos del contrato de préstamo (Art. 1324 CC). Sin embargo, su caso adoleció de una carencia absoluta de prueba documental que respaldara su alegación.
- El TPI aquilató la credibilidad de los testigos de manera arbitraria y selectiva, creando una narrativa que no se sustenta en un análisis riguroso de la prueba. Testimonio de Heyda Cintrón y Eduardo Joglar: Su testimonio fue esencialmente de oídas (hearsay). Cintrón repitió lo que la apelada Rivera le dijo, y Joglar repitió lo que la apelante le dijo. Si bien algunas excepciones al hearsay pudieron aplicar, su testimonio no prueba la intención original de las

> partes al momento de la emisión de los cheques, sino percepciones y reclamos posteriores. El Tribunal erró al otorgar a este testimonio un peso superior al de los documentos contemporáneos.
> - Los cheques, que son el único instrumento que prueba la transacción, fueron girados exclusivamente a nombre de Valerie Nicole Rivera Fontánez. El Sr. Meléndez Cortés no firmó estos cheques, no los endosó, y no existe prueba alguna de que él los recibiera, depositara o utilizara de manera que pudiera interpretarse como aceptación tácita de una obligación de repago.

De igual manera, los apelantes, al pretender impugnar la apreciación de la prueba y fallar en presentar la transcripción o una exposición narrativa estipulada de la prueba oral, tampoco nos permiten revisar adecuadamente si el TPI incurrió en algún error, al limitar la admisibilidad de cierta evidencia documental, entiéndase la ***Carta de Donación de 2020***.

Enfatizamos que el TPI no hace mención de dicho documento en la *Sentencia* objetada, pero en la *Minuta*[3] del juicio se menciona que el representante legal de los apelantes intentó utilizar un documento, al contrainterrogar a la señora Cañuelas León, como prueba de refutación el que entendemos se refiere a dicha ***Carta de Donación de 2020***. Sobre este particular, en la *Minuta* se indica que "[d]e ser solamente un documento, el Tribunal lo admite con la salvedad, ya que al final se sopesa la credibilidad de los testigos".

A base de lo antedicho, como expone la parte apelada en su alegato en oposición, colegimos que los errores primero al cuarto se refieren a asuntos que fueron presentados y aquilatados por el TPI durante la celebración del juicio. De modo que, también se trata de señalamientos de error relacionados a la apreciación de la prueba realizada por el foro recurrido. Tal cual explicado, cuando una parte pretende impugnar la apreciación de la prueba, esta viene obligada a presentar la transcripción o una exposición narrativa estipulada de la prueba oral.

---

[3] Véase, SUMAC del TPI, Entrada núm. 108.

Por consiguiente, en ausencia de evidencia que demuestre que el TPI actuó con pasión, prejuicio o parcialidad, o incurrió en error manifiesto, estamos impedidos de sustituir el criterio del tribunal *a quo*, por lo que damos deferencia a la apreciación de la prueba realizada por este. Por lo que, razonamos que los errores primero, segundo, tercero y cuarto no fueron cometidos.

De otro lado, en el quinto error los apelantes cuestionan la determinación de temeridad y la concesión a la apelada de $2,000 por concepto de honorarios de abogado.

Como señalamos, en nuestro ordenamiento la evaluación de si ha mediado o no temeridad, **recae sobre la sana discreción del tribunal sentenciador**, y solo se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. De un análisis del trámite procesal del presente caso, y de un examen de los argumentos esbozados por los apelantes, no surge que el foro apelado haya incurrido en un abuso de discreción al concluir que dicha parte fue temeraria. Más aún, del dictamen apelado surgen diáfanamente los criterios para dicha determinación.

Al respecto, los apelantes arguyen en el recurso que presentaron una defensa válida, ya que los cheques dicen "DONACIÓN" y establecer que ello significa realmente "PRÉSTAMO" es una teoría legalmente arriesgada que corresponde a la demandante probar. Por lo que, estos tenían todo el derecho del mundo a defenderse señalando la literalidad de los documentos y la carta de la señora Cañuelas León. Por ende, especificaron que "[c]ondenar por temeridad a una parte por presentar una defensa sustentada en la prueba de la contraria es un acto punitivo que enfría el derecho constitucional a la defensa y envía un mensaje

aterrador a cualquier litigante: 'Si te defiendes con la prueba que te presenta tu adversario, serás castigado'."[4]

De un análisis del trámite procesal del presente caso, y de lo decretado por el TPI en la *Sentencia* apelada, no surge que el foro apelado haya incurrido en un abuso de discreción al concluir que los apelantes fueron temerarios. Esto, máxime cuando quedó evidenciado, mediante el propio testimonio incontrovertido vertido por el Sr. Juan Manuel Meléndez Cortés en la vista de juicio en su fondo, que el dinero entregado a estos por la señora Cañuelas León fue en calidad de préstamo y no una donación como habían alegado en la contestación a la demanda. En este sentido, se promovió un caso inmeritorio y obligó a la apelada a involucrarse en trámites y gastos evitables.

En fin, entendemos que el foro primario no cometió el quinto error. Por lo que, no encontramos motivos para reducir o eliminar la cuantía de $2,000, impuesta a los apelantes por honorarios de abogado.

**IV.**

Por los fundamentos antes expuestos, procede confirmar la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[4] Escrito de Apelación, a la pág. 10.