| Estado Libre Asociado de Puerto Rico TRIBUNAL DE APELACIONES PANEL III | | |
|---|---|---|
| FIRST BANK PUERTO RICO  Apelada  v.  LATIN AMERICAN FINANCIAL CORPORATION  Apelante | TA2025AP00382 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Civil núm.: SJ2024CV11519 (903)  Sobre: Cobro de Dinero |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 3 de noviembre de 2025.

Comparece ante este tribunal apelativo, Latin American Financial Corporation (Latin American o parte apelante) mediante el recurso de apelación de epígrafe solicitándonos que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 5 de septiembre de 2025, notificada el mismo día. Mediante este dictamen, el foro primario declaró Ha Lugar a la *Solicitud de Desestimación de Reconvención* instada por FirstBank Puerto Rico (FirstBank o parte apelada) y desestimó con perjuicio la *Reconvención* incoada por la parte apelante.

Por los fundamentos que expondremos a continuación, determinamos confirmar el dictamen apelado.

### I.

El 16 de diciembre de 2024, FirstBank Puerto Rico presentó una demanda sobre cobro de dinero en contra de Latin American. En esencia, alegó que la parte apelante mantiene una cuenta de depósito en el banco, la que al 16 de diciembre de 2024 mantiene un sobregiro de $573,521.83, y cargos por la existencia de dicho

sobregiro por $5,629.16, más la cantidad que se acumule hasta su completo saldo. Asimismo, indicó que Latin American no ha pagado la deuda a pesar de las gestiones de cobro realizadas y las oportunidades concedidas para cumplir con su obligación; por lo que, solicitó al TPI se ordenara el pago de las cuantías reclamadas más una cantidad en concepto de costas, gastos y honorarios razonables de abogado.

Además, peticionó se ordene la ejecución y venta de todo bien o bienes pertenecientes a Latin American para satisfacer cualquier parte pendiente de la Sentencia que en su día se dicte y que no sea cubierta mediante el pago de la misma.

Luego de varios trámites innecesarios detallar, Latin American presentó la contestación a la demanda en la que negó las alegaciones en su contra y expuso que la parte apelada fue quien ocasionó el sobregiro de la cuenta.[1] A su vez, incluyó una *Reconvención* en la que, en síntesis, arguyó que la falta de controles internos por parte del banco provocó sobregiros y pagos en exceso a la línea de crédito, generando una aparente deuda que en realidad fue producto de su propio sistema y falta de fiscalización. Expuso que, como acto de buena fe, realizó pagos adicionales a FirstBank y su contador interno identificó que no existía ninguna deficiencia real en la cuenta, y que los fondos utilizados fueron debidamente pagados y aceptados por la parte apelada. Añadió que el banco, de manera unilateral e injustificada, procedió a cancelar abruptamente todas las líneas de crédito existentes y las cuentas bancarias asociadas, terminando así la relación comercial sin previo aviso ni diálogo constructivo. Lo que provocó múltiples consecuencias adversas, más afectó la reputación financiera de Latin American.

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada núm. 27.

A base de sus alegaciones, reclamó una indemnización en daños y perjuicios no menor de $5,000,000.

El 7 de julio de 2025, FirstBank instó ante el TPI una *Solicitud de Desestimación de Reconvención,* al amparo de la Regla 10.2(5) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5).[2] En esta argumentó que, aun aceptando como ciertos los hechos alegados por Latin American, para propósitos de la solicitud, resulta forzoso concluir que las actuaciones imputadas a FirstBank no configuran una causa de acción que justifique la concesión de un remedio en derecho. Más bien, los propios hechos expuestos en la *Reconvención* demuestran que el banco ejerció las facultades contractuales acordadas entre las partes.

En específico, arguyó que la relación se regía por lo establecido en los documentos intitulados *Convenio de Líneas de Crédito BFirst & Business Plus con Garantía de Certificado de Depósito,* suscritos para las cuentas 600XXXX0769 y 600XXXX0780, cada una con un límite de crédito de $250,000. Los que contienen disposiciones expresas que autorizan a FirstBank a cancelar la línea de crédito en cualquier momento, sin necesidad de aviso previo, y a exigir el pago inmediato del balance adeudado. Además, advirtió que los referidos convenios disponían el procedimiento claro y definido para la aplicación de los pagos efectuados a las líneas de crédito y conforme al cual se realizaron los mismos. También adujo que la responsabilidad de no excederse del límite de crédito recaía en Latin American.

Asimismo, señaló que el Sr. Melvin Navedo Marrero, Presidente, no es parte en el pleito, ya que este no figura como parte de los contratos objeto de la demanda. Así que, al no haberse incluido como parte, y al carecer Latin American de legitimación

---

[2] *Íd.*, Entrada núm. 40.

activa para reclamar por derechos de un tercero ajeno al pleito, procede la desestimación de dichas alegaciones.

Por lo anterior, expresó que no se configura una causa de acción por daños y perjuicios, toda vez que los presuntos daños alegados por Latin American no surgen como consecuencia de un acto u omisión negligente o doloso por parte de FirstBank, sino del cumplimiento estricto de los términos contractuales libremente pactados entre las partes. Agregó que, si una de las partes enfrenta consecuencias adversas como resultado del ejercicio legítimo de derechos contractuales por otra parte, no convierte ese proceder en fuente de responsabilidad extracontractual.

Arguyó que tampoco procedería una causa de acción por daños contractuales, debido a que la cancelación de las líneas de crédito fue consecuencia directa del propio incumplimiento de Latin American con los términos de los contratos, al no pagar el balance adeudado.

El 21 de julio siguiente, Latin American instó la oposición a la antedicha *Reconvención*.[3] En el escrito, mencionó que las alegaciones incluidas en esta, para fines de adjudicar la solicitud de desestimación, deben ser consideradas como ciertas, y establecen que la ausencia de controles y diligencia por la parte apelada, en el manejo de las cuentas a su cargo, llevó a cancelar erróneamente las facilidades de crédito; lo que le ocasionó daños.  En especial, debido a que los contratos mencionados por la parte apelada requieren que se notifique los incumplimientos a sus clientes. Así que advirtió que cualquier cancelación de la facilidad crediticia, a raíz del incumplimiento con los términos del contrato, debió de haber estado precedida de notificación a la parte apelante.

---

[3] SUMAC TPI, Entrada núm. 50.

Indicó que tiene el derecho de obtener la prueba que le permita defenderse de la solicitud de desestimación. Al respecto, señaló que carece de contestaciones de FirstBank bajo juramento, no ha tomado deposiciones, lista de testigos y lo que estos declararían. Arguyó, además, que la solicitud de desestimación presentada fundamenta sus planteamientos en la interpretación acomodaticia y selectiva de los contratos de adhesión y sus cláusulas.

Especificó que los incumplimientos de FirstBank, que consistieron en la falta de los controles, conllevaron a sobregirar las cuentas y a acusar a la compareciente de incumplimiento y proceder a la cancelación sin notificación de las facilidades crediticias con las que operaba. Por ello, anotó que las actuaciones del banco y no la letra de los contratos lo que constituye el incumplimiento.

FirstBank replicó a la referida oposición.[4] En síntesis, indicó que, aun aceptando que los contratos son de adhesión, sus términos son inequívocos al reconocer la facultad del banco para actuar como lo hizo. Por ende, no se configura incumplimiento contractual ni conducta culposa o negligente que dé lugar a una reclamación de daños.

También mencionó que carece de mérito la alegación de Latin American sobre que la *Solicitud de Desestimación* debe tratarse como una moción de sentencia sumaria por haberse incluido los contratos de las líneas de créditos. Esto, debido a que la mera inclusión de documentos en una moción de desestimación no implica su conversión automática en una solicitud de sentencia sumaria. En especial, cuando los referidos convenios crediticios son documentos conocidos y suscritos por Latin American, cuya

---

[4] SUMAC TPI, Entrada núm. 54.

autenticidad no ha sido impugnada, y que resultan medulares a su propia reclamación.

De otra parte, argumentó que las actuaciones imputadas a FirstBank estaban expresamente contempladas en los contratos. "En particular, los Contratos autorizaban a FirstBank, a su entera discreción, a: "aumentar, disminuir, suspender o descontinuar el Límite de Crédito aplicable a [la] Línea de Crédito. Lo anterior sin requisito alguno de notificación previa"; "cancelar la Línea de Crédito"; "dar por terminado [el] Convenio y/o terminar el derecho a realizar transacciones futuras en la Línea de Crédito en cualquier momento y sin previa notificación escrita"; y "extender crédito para cubrir sobregiros relacionados a pagos con cheques, compra de bienes o servicios o cualesquiera otros cargos". Véase, Entrada Núm. 40 del SUMAC, Anejos 1 y 2. Por tanto, aun tratándose de contratos de adhesión, sus términos con claros y no dejan margen a interpretación, por lo que no procede aplicar la regla de interpretación especial aplicable a este tipo de contratos."[5]

Por ello, manifestó no existe incumplimiento contractual ni conducta negligente o culposa que justifique la concesión de un remedio en derecho, por lo que la *Reconvención* debe ser desestimada.

Latin American presentó la respuesta a la réplica en la que apuntaló argumentos similares incluidos en su oposición al pedido desestimatorio.[6]  Reafirmó que las alegaciones esbozadas en contra de FirstBank son específicas y en las mismas se establece que los empleados del banco incurrieron en conducta negligente en la administración de las cuentas rotativas de crédito.

Analizados los mencionados escritos, el 5 de septiembre de 2025, el foro primario emitió y notificó la *Sentencia Parcial* apelada

---

[5] SUMAC TPI, Entrada núm. 54, a la pág. 9.
[6] SUMAC TPI, Entrada núm. 58.

en la que declaró *Ha Lugar* a la *Solicitud de Desestimación de Reconvención* instada por FirstBank y, en consecuencia, desestimó con perjuicio la *Reconvención* incoada por Latin American. Asimismo, el TPI razonó que:[7]

...

Según se desprende de los documentos anejados a la Solicitud de Desestimación de FirstBank, la relación entre Latin American y FirstBank se regía por lo establecido en dos documentos titulados, *Convenio de Líneas de Crédito BFirst & Business Plus con Garantía de Certificado de Depósito,* suscritos para las cuentas 600XXXX0769 y 600XXXX0780, cada una con un límite de crédito de $250,000.00 (en conjunto, los "Contratos"). De una lectura detenida de los Contratos se desprende que estos contienen disposiciones expresas que autorizan a FirstBank a cancelar la línea de crédito en cualquier momento, sin necesidad de aviso previo, y a exigir el pago inmediato del balance adeudado.

Las disposiciones contractuales, las cuales Latin American no impugna en su Reconvención, tienen el efecto de desvirtuar cualquier reclamación en daños y perjuicios como consecuencia de la cancelación de las líneas de crédito. Según surge de los mismos, los Contratos le otorgaban a FirstBank amplia discreción para cancelar la línea de crédito sin previo aviso, exigir el pago total del balance y congelar el uso futuro de la línea de crédito. El Tribunal Supremo ha reconocido que "las partes pueden pactar una cláusula resolutoria unilateral que confiera a una sola de ellas la facultad de poner fin a la relación contractual por su mera voluntad, esto en perfecta armonía con el principio de pacta sunt servanda". Engineering Service v. AEE, 209 DPR 1012, 1023 (2022). En ese sentido, las alegaciones de Latin American, lejos de evidenciar una actuación ilícita, negligente o dolosa, evidencian que FirstBank actuó conforme a lo expresamente pactado por las partes.

En cuanto al manejo de pagos, Latin American alega que efectuó pagos parciales y totales a las líneas de crédito, incluso desde cuentas externas, y que FirstBank no los aplicó adecuadamente. No obstante, los Contratos establecen expresamente el mecanismo de aplicación de pagos y la naturaleza rotativa de la línea de crédito. Por lo que, del propio lenguaje de estos se desprende que, contrario a lo que alega Latin American, FirstBank sí contaba con un procedimiento claro y definido para la aplicación de los pagos efectuados a las líneas de crédito y conforme el cual realizó la referida aplicación. Por tanto, cualquier alegación sobre la supuesta retención de pagos en exceso tampoco procede, toda vez que los Contratos establecían que dichos pagos se aplicarían conforme al orden preestablecido y, si excedían el balance total adeudado, serían automáticamente acreditados a la cuenta del cliente como depósito disponible. Por tanto, FirstBank actuó conforme a lo pactado

---

[7] SUMAC TPI, Entrada núm. 60, a las págs. 11-15. Notas al calce omitidas.

contractualmente, por lo que estas alegaciones tampoco justifican la concesión de un remedio al amparo del Art. 1536 del Código Civil de 2020, *supra*.

Por otra parte, Latin American sostiene que los supuestos sobregiros fueron consecuencia de errores en el propio sistema de FirstBank, el cual permitió y procesó pagos por encima del límite autorizado de la línea de crédito. Según aduce, los sobregiros no se debieron a negligencia de su parte, sino a fallas operativas atribuibles a FirstBank. Sin embargo, estas alegaciones carecen de sustento a la luz de lo dispuesto en los propios Contratos, cuyas disposiciones demuestran que la responsabilidad de no excederse del límite de crédito recaía en Latin American. Además, evidencian que, contrario a lo alegado por Latin American, la ocurrencia de sobregiros, atribuibles, exclusivamente, a las acciones de Latin American no constituye una falla en el sistema, sino una eventualidad regulada por los propios Contratos, los cuales disponían el procedimiento a seguir en caso de Latin American incurrir en los mismos.

Finalmente, la Parte Demandada afirma que FirstBank autorizó y procesó cheques emitidos desde la cuenta corriente vinculada a la línea de crédito, basándose en la disponibilidad reflejada en dicha línea. No obstante, una vez aprobadas esas transacciones, FirstBank presuntamente cambió su postura y alegó que no existían fondos suficientes para cubrir los cheques, a pesar de que los fondos supuestamente estaban disponibles al momento de su emisión. No obstante, los Contratos establecen que "EL BANCO a su entera discreción podrá congelar la Línea de Crédito aun cuando exista balance disponible en su Cuenta de Depósito y/o Línea de Crédito". Asimismo, los convenios disponen que "EL BANCO a su vez podrá dar por terminado este Convenio y/o terminar el derecho a realizar transacciones futuras en la Línea de Crédito en cualquier momento y sin previa notificación [...]". Esto desvirtúa la alegación de que FirstBank "cambió de postura" al procesar ciertas transacciones y luego alegar falta de fondos, el contrato expresamente le otorgaba dicha facultad.

De ello se desprende que, aun tomando como ciertas las alegaciones de la Reconvención e interpretándolas de la forma más liberal a favor de la Parte Demandada, no se configura una causa de acción por daños y perjuicios, toda vez que los presuntos daños alegados por Latin American no surgen como consecuencia de un acto u omisión negligente o doloso por parte de FirstBank, sino del cumplimiento estricto de los términos contractuales libremente pactados entre las partes. El hecho de que una de las partes sufra consecuencias adversas como resultado del ejercicio legítimo de derechos contractuales por la otra parte no convierte ese proceder en fuente de responsabilidad extracontractual. Por tanto, no se desprende de la Reconvención una conducta antijurídica que justifique la imposición de responsabilidad en daños.

Además, somos de la postura que tampoco procedería una causa de acción por daños contractuales. Como ha reiterado el Tribunal Supremo

de Puerto Rico, una acción por daños contractuales exige: (1) la existencia de un contrato válido; (2) su incumplimiento culposo o doloso; (3) un daño real; y (4) un nexo causal directo entre el incumplimiento y el daño alegado. *Muñiz-Olivari v. Stiefel Labs.*, 174 DPR 813, 819 (2008). Así las cosas, en caso de autos no se configuran dichos requisitos. En el presente caso, no existe incumplimiento alguno atribuible a la Parte Demandante. El proceder de FirstBank no contraviene los convenios suscritos entre las partes; si no que constituye, la ejecución de las facultades expresamente reconocidas en dichos contratos.

A la luz de ello, y conforme a la Regla 10.2(5) de Procedimiento Civil, supra, procede la desestimación de la Reconvención presentada por Latin American, por no exponer una reclamación que justifique la concesión de un remedio en derecho.

Por otro lado, la Reconvención de Latin American invoca el principio general de buena fe y la doctrina de actos propios como fundamentos para su reclamación por daños y perjuicios. Sin embargo, tales referencias no constituyen en sí mismas causas de acción reconocidas en nuestro ordenamiento, ni permiten la imposición de responsabilidad extracontractual. Nada de lo alegado por Latin American en su Reconvención cumple con los requisitos en ley para establecer una causa al amparo de la referida doctrina. Tampoco se desprende de la Reconvención que FirstBank haya incurrido en una conducta previa incompatible con su proceder actual, ni que Latin American haya actuado en su perjuicio confiando razonablemente en una apariencia generada por FirstBank.

Por tanto, aun interpretando las alegaciones de la Reconvención de la forma más liberal a favor de Latin American, es forzoso concluir que tampoco bajo la doctrina de actos propios o el principio de buena fe se configura una reclamación que justifique la concesión de un remedio en derecho. Así las cosas, procede también por este fundamento la desestimación de la Reconvención al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra.*

Por último, Latin American incluye alegaciones en su Reconvención dirigidas no solo al alegado menoscabo reputacional de la entidad, sino también a un supuesto daño directo a la reputación personal y profesional de su presidente, el Sr. Navedo. No obstante, Latin American, como entidad corporativa, carece de legitimación activa para reclamar daños personales sufridos por un tercero. Tal reclamación le pertenece exclusivamente al propio Sr. Navedo, quien no es parte en este caso.

A la luz de lo anterior, al no configurarse una causa de acción válida ni al amparo de la responsabilidad contractual ni extracontractual, y en ausencia de legitimación activa para reclamar en nombre de un tercero que no forma parte del pleito de autos procede que este tribunal desestime con perjuicio la Reconvención presentada por Latin American, conforme a lo dispuesto en la Regla 10.2(5) de Procedimiento Civil, *supra.*

Inconforme con el dictamen, Latin American acude ante este foro intermedio mediante el recurso de apelación de epígrafe imputándole al TPI haber incurrido en los siguientes errores:

> A. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DICTAR SENTENCIA PARCIAL EN ESTE CASO MEDIANTE LA CUAL AVALÓ LA SOLICITUD DE DESESTIMACIÓN DE LA PARTE APELADA, CUANDO ES PATENTE LA FALTA DE DESCUBRIMIENTO DE PRUEBA EN EL CASO DE EPÍGRAFE.
>
> B. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DESESTIMAR CON PERJUICIO LA RECOVENCIÓN DE ESTE CASO, PESE A QUE LA MISMA IDENTIFICA ALEGACIONES ESPECÍFICAS QUE DELATAN CONTROVERSIAS DE HECHOS QUE AMERITAN EL DESCUBRIMIENTO DE PRUEBA, QUE NO SE HA CULMINADO.

El 29 de septiembre de 2025, emitimos una *Resolución* en la que concedimos a la parte apelada hasta el lunes, 20 de octubre de 2025, para expresarse. Ese día, FirstBank cumplió con lo ordenado por lo que nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Regla 10.2 de las de Procedimiento Civil**

Una persona contra quien se haya presentado una reclamación judicial puede solicitar su desestimación cuando, de la faz de las alegaciones de la demanda, surja que alguna defensa afirmativa puede derrotar la pretensión del demandante. *Conde Cruz v. Resto Rodríguez et al*, 205 DPR 1043, 1077-1078 (2020); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012).

A tales efectos, la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, dispone lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
> (1) Falta de jurisdicción sobre la materia;
>
> (2) Falta de jurisdicción sobre la persona;

(3) Insuficiencia del emplazamiento;

(4) Insuficiencia del diligenciamiento del emplazamiento;

(5) Dejar de exponer una reclamación que justifique la concesión de un remedio;

(6) Dejar de acumular una parte indispensable;

[...] Si en una moción en que se formula la defensa (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla.

La citada regla establece los fundamentos para que una parte en un pleito pueda solicitar la desestimación de una demanda en su contra, mediante la presentación de una moción fundamentada en cualesquiera de los motivos en ella expuestos. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 820-821 (2013); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 935 (2011). En lo pertinente, la Regla 10.2(5) de las de Procedimiento Civil, *supra*, dispone que el demandado puede fundamentar su solicitud en que la demanda no expone "una reclamación que justifique la concesión de un remedio". En tales casos, la desestimación solicitada se dirige a los méritos de la controversia y no a los aspectos procesales. *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 104 (2002).

Ahora bien, para que proceda esta moción "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor." *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR ___ (2025); *Rivera San Feliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015); *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013).

Asimismo, ante una moción de desestimación, bajo la antedicha norma, la demanda y sus alegaciones han de ser consideradas por el tribunal lo más liberalmente posible a favor de la parte demandante. El tribunal que evalúa la moción de desestimación debe concederle a la parte demandante el beneficio de toda inferencia posible que pueda surgir de la demanda.

Por su parte, nos explica el tratadista Cuevas Segarra que:

> Esta regla permite al demandado solicitar que se desestime la demanda en su contra, cuando entre otras razones ésta "no expone una reclamación que justifique la concesión de un remedio". A los fines de disponer de una moción de desestimación, el Tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. **El promovente tiene que demostrar que presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio**. Esta doctrina se aplica solamente a hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación No se determinará si el demandante prevalecerá finalmente en el pleito, sino si el demandante tiene o no derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos bien alegados en la demanda.
> …
> La controversia no es si el demandante va a finalmente prevalecer, sino, si tiene derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos bien alegados en la demanda.

José Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Publicaciones JTS, 2000, Tomo I, pág. 271 citando a *Davis y Monroe County Board of Ed.*, 143 LE 2d 839 (1999). (Énfasis nuestro)

Por ello, al evaluar una moción al amparo de la Regla 10.2 de las de Procedimiento Civil, *supra*, cuando el promovente alega falta de parte indispensable, falta de jurisdicción o dejar de exponer una reclamación que justifique un remedio, ni el tribunal ni la parte demandada ponen en duda, para efectos de esa moción, los hechos alegados en la demanda porque se ataca por un vicio intrínseco de esta o del proceso seguido. *Roldán v. Lutrón, S.M., Inc.*, 151 DPR 883 (2000).

En fin, la desestimación de la reclamación judicial procede cuando surja de los hechos bien alegados en la demanda que la parte demandante no tiene derecho a remedio alguno. *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010). Para alcanzar dicha conclusión, es necesario que el tribunal considere ciertas todas las alegaciones fácticas que hayan sido aseveradas de manera clara en la demanda. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón v. Lotería*, 167 DPR 625, 649 (2006).

**Teoría General de los Contratos**

En nuestro ordenamiento jurídico son fuente de obligación la ley, **los contratos**, los cuasicontratos, los actos ilícitos, los actos u omisiones en los que interviene culpa o negligencia y cualquier acto idóneo para producirlas conforme a los establecido bajo el estado de derecho. Artículo 1064 del Código Civil, 31 LPRA sec. 8985. Los contratos existen desde que una o varias personas expresan su consentimiento para obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio por las formas previstas en ley. Artículo 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Un contrato se perfecciona cuando las partes consienten sobre el objeto y la causa especifica a las que se obligan. Artículo 1237 del Código Civil de 2020, 31 LPRA sec. 3391. *Sonnell Transit Serv. v. Junta de Subastas*, 2025 TSPR 85, 216 PRR ___ (2025).

En este sentido, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Artículo 1238 del Código Civil de 2020, 31 LPRA sec. 9772. El objeto, por su parte, debe ser determinable. No pueden ser objeto del negocio jurídico los hechos de realización imposible, ilícitos, inmorales, contrarios al orden público, a las buenas costumbres, o lesivos de derechos de terceros. Art. 269 del Código Civil de 2020, 31 LPRA sec. 6131. *Sonnell Transit Serv. v. Junta de Subastas,* supra. Mientras que, en esencia, la causa es el

fin que motiva la contratación y que se presumirá lícita, aunque no esté expresada. Art. 271 del Código Civil de 2020, 31 LPRA sec. 6142.

Es decir, que son elementos esenciales del contrato el consentimiento, objeto y causa. Siempre que concurran estas tres condiciones para su validez, el acuerdo entre las partes se hace obligatorio. *Sonnell Transit Serv. v. Junta de Subastas*, supra; *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 995 (2024). Por tanto, lo acordado tiene fuerza de ley entre las partes. Artículo 1233 del Código Civil de 2020, 31 LPRA sec. 9754. Sin embargo, es menester puntualizar que, tras su perfeccionamiento, las partes no solo se obligan a su cumplimiento, sino también a sus consecuencias.

Por otro lado, nuestro ordenamiento jurídico, como regla general, establece que los negocios jurídicos -incluidos los contratos- son de libre forma a excepción de que la ley imponga una forma determinada para su validez, o que así lo convengan entre las partes. Artículo 277 del Código Civil de 2020, 31 LPRA sec. 6161. Es decir que, cuando no se acuerde entre los contratantes y la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente. Ante la ausencia de un requisito de forma, el acuerdo entre las partes puede ser escrito o verbal.

**III.**

En esencia, la parte apelante planteó que erró el TPI y abusó de su discreción al dictar una *Sentencia Parcial* mediante la cual avaló la solicitud de desestimación de FirstBank, cuando todavía resta por culminar el descubrimiento de prueba. Asimismo, expuso que el foro *a quo* incidió al desestimar con perjuicio la *Reconvención*, a pesar de que esta contiene alegaciones específicas que crean controversias de hechos que ameritan un descubrimiento de

prueba. Por estar relacionados entre sí, atenderemos ambos señalamientos de error en conjunto.

De entrada, advertimos que el TPI adjudicó el pedido desestimatorio de la *Reconvención* bajo el estándar de revisión de la Regla 10.2 (5) de las Reglas de Procedimiento Civil, *supra*, el que como expusimos previamente, requiere que el tribunal considere, la demanda y sus alegaciones, lo más liberalmente posible a favor de la parte demandante. Así pues, el tribunal que evalúa la moción de desestimación debe concederle a la parte demandante el beneficio de toda inferencia posible que pueda surgir de la demanda.

Ahora bien, la parte apelante, en el recurso, impugna el proceder del foro revisado, basado en que "… dictó su Sentencia pese a la existencia de un requerimiento de interrogatorios, requerimiento de admisiones y requerimiento para la producción de documentos que le cursó la parte apelante a la parte apelada y que la última, a la fecha de redacción de este escrito, no ha contestado todavía."[8] Asimismo, añadió que:

> …
> los hechos de la Reconvención de la parte apelante son específicos y delatan controversias genuinas de hechos medulares de este caso y no procede su desestimación con perjuicio. Las alegaciones de la Reconvención ponen de manifiesto que los empleados de la parte apelada incurrieron en conducta negligente en la administración de las cuentas rotativas. Aún si concedemos para fines de este argumento que los contratos otorgados sirven de palio y apoyo para llevar a cabo actos que ocasionaron daños a la compareciente y entonces escudarse en sus cláusulas procede el rechazo a la solicitud de desestimación."[9]

De la lectura minuciosa de los documentos intitulados *Convenio de Líneas de Crédito BFirst & Business Plus con Garantía de Certificado de Depósito*, suscritos por las partes para las cuentas de crédito núms. 600XXXX0769 y 600XXXX0780, surgen diáfanamente los siguientes términos y condiciones:[10]

---

[8] Véase, escrito de *Apelación*, a las págs. 10-11.
[9] Véase, escrito de *Apelación*, a las pág. 13.
[10] Véase, SUMAC TPI, Entrada núm. 40, Anejos 1 y 2. Énfasis nuestro.

**CONDICIONES GENERALES DE LA LINEA DE CREDITO**

...

2. El BANCO podrá en cualquier momento y a su entera discreción aumentar, disminuir, suspender o descontinuar el Límite de Crédito aplicable a su Línea de Crédito. Lo anterior sin requisito alguno de notificación previa a usted y sin afectar adversamente las obligaciones contraídas bajo este Convenio. La modificación, aumento, suspensión o descontinuación del límite de crédito autorizado no afectará, ni modificará el pago de cualquier obligación contraída bajo el presente Convenio.

4. ... Usted no podrá excederse del límite de crédito aprobado por El BANCO y de así hacerlo, cualquier cantidad en exceso del límite se le exigirá inmediatamente. El BANCO tendrá el derecho de cancelar la Línea de Crédito y requerir la devolución de cualesquiera documentos y dispositivos de acceso relacionados con la Cuenta de Depósito.

**PAGOS**

1. **Al suscribir el presente Convenio usted se obliga a pagar al BANCO el Balance Total Adeudado en la Línea de Crédito**. La Línea de Crédito es de naturaleza rotativa. Es decir, podrán volverse a tomar prestadas las sumas que pague hasta el límite de crédito autorizado y establecido.

2. **Si usted no page el Balance Total Adeudado de su Línea de Crédito el BANCO debitará automáticamente de su Cuenta de Depósito el Pago Mínimo Mensual o el Balance Total Adeudado**.

3. ...

4. Los pagos mensuales que sean debitados automáticamente de su Cuenta de Depósito, o cualquier otro pago que usted efectúe de conformidad a lo antes indicado, serán aplicados en el siguiente orden: Cargos por Financiamiento, Cargos por Demora, cualquier otro cargo según pactado, y pago al principal adeudado. Cualquier pago en exceso al Balance Total Adeudado, será reflejado en un depósito en el módulo de cheques de su Cuenta de Depósito.

5. **El BANCO a su entera discreción podrá congelar la Línea de crédito aun cuando exista balance disponible en su Cuenta de Depósito y/o en la Línea de Crédito**. ...

**INCUMPLIMIENTO**

1. <u>Cargos por Demora</u> — De usted incumplir con el Pago mensual estipulado, el BANCO cobrará un Cargo por Demora según se indica en la página 1 de este Convenio, Inciso C 11 (Cargo por Demora). El pago de dicho cargo no relevará al Deudor de

cualesquiera otras consecuencias de su incumplimiento.

2. <u>Intereses por Incumplimiento</u> —De usted incumplir con el pago mensual estipulado dentro de treinta (30) días posteriores a la fecha del vencimiento del Pago, el Banco, en adición a cualquier cargo por demora, le aplicará una tasa de interés de penalidad par incumplimiento de pagos, aplicándole un aumento a su tasa de porcentaje anual. Refiérase a la página uno (1) de este Convenio, inciso C 12.

3. **El Banco podrá reducir su límite de crédito y requerir el pago inmediato de cualquier cantidad en exceso del límite establecido, en caso de incumplimiento del presente Convenio**.

4. **El BANCO podrá acelerar, dar por vencido y exigir el pago total del balance pendiente de pago en el caso de que usted no pague cualquier plazo. No se requerirá aviso, presentación o demanda de pago**.

**TERMINACIÓN DE ESTE CONVENIO**

1....

2. **El BANCO se reserva el derecho a reducir o cancelar la Línea de crédito en cualquier momento y a dar por terminado este Convenio**. Usted también tendrá el derecho a terminar este Convenio en cualquier momento. La terminación de la Línea de Crédito por cualquiera de las partes tampoco afectará su obligación de pagar las cantidades adeudadas de acuerdo con los Términos de este Convenio. **A opción del BANCO, sin aviso previo y en las circunstancias en que las leyes y regulaciones aplicables lo permitan, la totalidad de las cantidades que usted adeudare bajo este Convenio quedarán vencidas y su pago será exigible y pagadero inmediatamente**.

4. **El BANCO se reserva el derecho de cancelar, terminar o suspender el presente Convenio si razonablemente cree que usted no podrá cumplir con sus obligaciones de pago debido a un cambio material en su situación económica o de extender que existe un riesgo de seguridad.**

De las cláusulas antes transcritas y, acorde con el estándar de revisión antes reseñado, coincidimos con el raciocinio del TPI al entender procede la desestimación de la *Reconvención* presentada por Latin American, al palio de la Regla 10.2 (5) de las Reglas de Procedimiento Civil, *supra,* por no exponer una reclamación que justifique la concesión de un remedio en derecho.

Los términos y condiciones incluidos en los convenios de las cuentas de crédito rotativas, detallados previamente, contienen un

lenguaje claro y sencillo que no admite interpretación. Pretender, como lo intenta hacer Latin American, en su recurso que, a base de ciertas alegaciones, las que tomamos como ciertas, para fines de adjudicar la moción de desestimación, se deje sin efecto o ignoremos lo diáfanamente estipulado por las partes no procede en derecho. Esto, máxime cuando es fácil colegir que Latin American Financial Corporation es un ente comercial con el conocimiento financiero suficiente para comprender a cabalidad las repercusiones de las obligaciones que asumió para con FirstBank; así como los derechos adscritos al banco acorde con las estipulaciones incluidas en los *Convenios de Líneas de Crédito BFirst & Business Plus con Garantía de Certificado de Depósito.*

Al respecto, resulta importante apuntalar que, en los referidos contratos suscritos para cada cuenta, se estableció de manera patente, según antes acentuamos, que "[e]l BANCO podrá en cualquier momento y a su entera discreción aumentar, disminuir, suspender o descontinuar el Límite de Crédito aplicable a su Línea de Crédito. Lo anterior sin requisito alguno de notificación previa a usted y sin afectar adversamente las obligaciones contraídas bajo este Convenio." Asimismo, se convino que "[e]l BANCO podrá acelerar, dar por vencido y exigir el pago total del balance pendiente de pago en el caso de que usted no pague cualquier plazo. No se requerirá aviso, presentación o demanda de pago." De igual forma, ambas partes estipularon que "[e]l BANCO se reserva el derecho a reducir o cancelar la Línea de crédito en cualquier momento y a dar por terminado este Convenio."

Por su parte, no podemos obviar que Latin American no impugna el contenido de los referidos términos y condiciones. Más aún precisa enfatizar que, como expusimos en el derecho precedente, tras el perfeccionamiento de un contrato las partes no

solo se obligan a su cumplimiento, sino también a sus consecuencias.

Por tanto, coincidimos con el raciocinio del TPI según detallado previamente del cual no cabe duda de que el tribunal analizó de manera individual las distintas alegaciones de la *Reconvención* instada por la parte apelante y, aun tomando estas como ciertas, e interpretándolas lo más liberalmente a su favor, concluyó que Latin American no tiene derecho alguno bajo el estado de derecho que pudiese probar. Recordemos que para evitar la desestimación, Latín American, como demandante, debía proveer las bases fácticas sobre las cuales descansa su reclamación que sean suficientes para elevar su derecho a la concesión de un remedio, más allá de un nivel especulativo. *Bell Atlantic Corp. v. Twombly*, 550 US 544, 555 (2007).

Con respecto al argumento principal planteado por Latin American en el recurso, relativo a que el foro *a quo* resolvió desestimar la *Reconvención,* aun faltando por culminar el descubrimiento de prueba, resulta indispensable subrayar que una vez el tribunal determina que la reclamación no cumple con el estándar de plausibilidad, **se debe desestimar la reclamación** y **no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba pueden probarse las alegaciones conclusorias**. Véase, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, San Juan, 6ta. Ed. LexisNexis de Puerto Rico, Inc., 2017, sec. 2604, pág. 307, citando a *Ashcroft v. Iqbal*, 556 U.S. 662, 684-685 (2009),

Relativo a lo antedicho, reiteró el Tribunal Supremo que, cuando se presente una moción de desestimación al amparo de la Regla 10.2(5) de las de Procedimiento Civil, *supra*, el tribunal debe considerar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente

para constituir una reclamación válida." *Morales et al. v. Asoc. Propietarios*, 214 DPR 284, 291 (2024), citando a *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008).

Por ello, no nos convence el planteamiento de que el foro apelado estaba impedido de adjudicar la moción desestimatoria por estar pendiente cierto descubrimiento de prueba, ya que como bien se establece en el ordenamiento jurídico, la demanda (en este caso la *Reconvención*) **en sí misma tiene que alegar suficientes hechos que demuestren que es factible que se tenga derecho a un remedio**. Por lo que, los hechos deben contener información específica, toda vez que la especulación no es suficiente para sostener una causa de acción. *Ashcroft v. Iqbal*, supra, a las págs. 678-679.

Así pues, recalcamos que la *Reconvención* no supera el estándar de revisión judicial bajo la Regla 10.2(5) de las de Procedimiento Civil, antes citada, y más aún, resulta improcedente el argumento de que para evitar la desestimación resulta necesario conseguir prueba adicional, como ya explicamos.

En fin, el TPI no incurrió en los errores imputados.

**IV.**

Por los fundamentos previamente expuestos, procede confirmar la *Sentencia Parcial* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones