ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **JUAN EUGENIO MATOS NAZARIO**<br><br>Recurrido<br><br>v.<br><br>**HUMBERTO RIVERA AYALA**<br><br>Recurrente | TA2025RA00412 | **REVISIÓN** procedente del **Departamento de Asuntos del Consumidor**<br><br>Querella Núm.: **MAY-2024-0005397**<br><br>Sobre: Contrato de Obras y Servicios |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece ante nos el ingeniero Humberto Rivera Ayala (ingeniero Rivera Ayala o parte recurrente), mediante un recurso de revisión judicial, y nos solicita que revoquemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACO) el 16 de octubre de 2025.[1] En dicho dictamen, el DACO ordenó la devolución de $4,200.00 a favor del señor Juan Eugenio Matos Nazario (Sr. Matos Nazario o recurrido) ante el incumplimiento contractual por parte del ingeniero Rivera Ayala.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

### I.

El presente caso tiene su génesis el 27 de agosto de 2024 cuando el Sr. Matos Nazario radicó una querella en el DACO contra

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones, Entrada Núm. 4, Anejo 3, págs. 1-9. Notificada y archivada en autos el 20 de octubre de 2025.

el ingeniero Rivera Ayala en concepto de práctica engañosa.[2] Sostuvo que, en el mes de mayo, contrató los servicios del ingeniero Rivera Ayala para segregar un predio de terreno localizado en el Municipio de Cabo Rojo. No obstante, alegó que, a pesar de haberle entregado un cheque por la cantidad $4,200.00, correspondiente a un 50% de un total de $8,400.00, el ingeniero Rivera Ayala ignoró sus correos electrónicos, llamadas telefónicas y una carta que le cursó. Por tal razón, el Sr. Matos Nazario suplicó de la agencia administrativa la cancelación del proyecto y la devolución del dinero.[3]

Por su parte, el 23 de octubre de 2024, el ingeniero Rivera Ayala radicó una *Contestación a Querella*.[4] Admitió que el Sr. Matos Nazario realizó el antedicho depósito el 7 de junio de 2024 para el trabajo estipulado. Sin embargo, expresó el ingeniero Rivera Ayala que llevó a cabo una serie de labores relacionadas al proyecto que conllevaron gastos totalizando $5,010.00, por lo que no procedía la devolución del dinero.

Luego de múltiples trámites procesales, el DACO celebró una vista y, posteriormente, emitió una *Resolución* el 16 de octubre de 2025.[5] Por medio de dicho dictamen, el DACO resolvió que el ingeniero Rivera Ayala incumplió sustancialmente con el convenio en cuestión, lo que justificó la cancelación del mismo por parte del Sr. Matos Nazario. En su consecuencia, la agencia administrativa ordenó la devolución de los $4,200.00.

Insatisfecho, el ingeniero Rivera Ayala radicó una *Solicitud de reconsideración* el 7 de noviembre de 2025.[6] Adujo que la cancelación del convenio se debió al arrepentimiento del Sr. Matos

---

[2] *Íd.*, Anejo 6, págs. 8-11.
[3] *Íd.*
[4] *Íd.*, págs. 1-2.
[5] *Íd.*, Anejo 3, págs. 1-9.
[6] *Íd.*, Anejo 2, págs. 6-12.

Nazario y que este conocía el estatus de las labores toda vez que había emitido un pago.

No habiéndose atendido la solicitud de reconsideración por parte del DACO, el ingeniero Rivera Ayala presentó ante nos un recurso de revisión judicial el 21 de diciembre de 2025 donde señaló a la agencia administrativa por la comisión de los siguientes errores:

**PRIMER ERROR: ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL ORDENAR DEVOLVER EL DINERO ENTREGADO COMO DEPÓSITO AL ING. HUMBERTO RIVERA AYALA TODA VEZ QUE EL MISMO ESTABA CUMPLIENDO CON SU TRABAJO LO CUAL SE DESPRENDE DE LAS PROPIAS DETERMINACIONES DE HECHOS DE LA AGENCIA.**

**SEGUNDO ERROR: ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR AL APLICAR EL DERECHO A LAS PROPIAS CONCLUSIONES DE HECHO QUE HIZO LAS CUALES ESTÁN CONTRARIA [SIC] A NUESTRO ORDENAMIENTO JURÍDICO VIGENTE YA QUE EL RECURRIDO CANCELÓ UNILATERALMENTE EL CONTRATO LUEGO QUE EL RECURRENTE HABÍA COMENZADO EL TRABAJO E INCLUSO HABÍA PAGADO A SUS EMPLEADOS PARA CUMPLIR CON EL MISMO NO HABIENDO NINGUNA CONDICIÓN SUSPENSIVA PARA REALIZAR EL TRABAJO COMO QUE EL MISMO NO SE IBA A REALIZAR SI SE VENDÍA LA PROPIEDAD.**

A pesar de haberle concedido oportunidad de comparecer, el Sr. Matos Nazario no presentó su alegato. En su consecuencia, procedemos a resolver sin el beneficio de su comparecencia, según advertido mediante nuestra *Resolución* emitida el 13 de enero de 2026.

**II.**

**A.**

El Artículo 4.006 (c) de la *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*, Ley Núm. 201 del 22 de agosto de 2003, según enmendada, 4 LPRA sec. 24y, faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. En el ejercicio de su facultad, los tribunales apelativos están obligados

a concederles deferencia a las decisiones administrativas, pues estas poseen la experiencia y el conocimiento especializado respecto a los asuntos que se les han delegado a las agencias. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33; *Torres Rivera v. Policía de PR*, 196 DPR 606, 627 (2016). De este modo, todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que la parte que las impugne debe producir suficiente evidencia para derrotarla. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 393-394 (2012).

Cónsono con lo anterior, al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 115 (2023). Al aplicar este criterio, los foros revisores deben resolver si la determinación de la agencia, en la interpretación de los reglamentos y las leyes, es razonable. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006). Es decir, la revisión judicial procede si la agencia administrativa actuó arbitraria o ilegalmente, o de una forma tan irrazonable que en su actuación abusó de su discreción. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR, supra*, pág. 626. De igual modo, al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. *Hernández Feliciano v. Mun. Quebradillas, supra*, págs. 114-115. La evidencia sustancial es " 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión' ". *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 266 (2007) (*citando a Hernández, Álvarez v. Centro Unido,*

*supra*, pág. 615). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Por otro lado, y por lo general, las agencias son las primeras intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Estado Libre Asociado de Puerto Rico*, 2024 TSPR 130. Sin embargo, los tribunales son el ente con el poder de interpretar las leyes y la constitución. *OEG v. Rodríguez y otros*, 159 DPR 98, 124 (2003). Cónsono con lo anterior, el Artículo 4.5 de la *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675, dispone que las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal". Así, la interpretación de la agencia administrativa "no prevalecerá cuando produzca resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública". *Otero Rivera v. Bella Retail Group, Inc.*, 214 DPR 473, 485 (2024) (Énfasis suplido en el original eliminado).

**B.**

En nuestra jurisdicción, las relaciones contractuales se rigen por los principios de la autonomía de la voluntad y *pacta sunt servanda*. *Batista Valentín v. Batista Valentín*, 2025 TSPR 93. La autonomía de la voluntad dispone que "[l]as partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público". Artículo 1232 del Código Civil de 2020, *supra*, sec. 9753; *Batista Valentín v. Batista Valentín*, *supra*; *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 182 (2018). Asimismo, el principio de *pacta sunt servanda* expone que "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Artículo 1233 del Código

Civil de 2020, *supra,* sec. 9754; *MCS Advantage, Inc. v. Fossas Blanco,* 211 DPR 135, 165 (2023). Sin embargo, las partes no quedan obligadas hasta el perfeccionamiento del contrato. *Álvarez v. Rivera,* 165 DPR 1, 19 (2005). A esos efectos, las partes deben manifestar "su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". *Sonnell Transit Service, LLC v. Junta de Subastas del Municipio Autónomo de Toa Baja,* 2025 TSPR 85.

Por otro lado, nuestro máximo foro ha reiterado que "no es necesario para la validez del contrato que éste se haga constar en documento público, pues los contratos son obligatorios independientemente de la forma en que se hayan celebrado". *VELCO v. Industrial Serv. Apparel,* 143 DPR 243, 250 (1997). A esos fines, el Artículo 277 del Código Civil de 2020, *supra,* sec. 6161, dispone que, "[c]uando la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente". En este sentido, el Tribunal Supremo de Puerto Rico admite los contratos verbales como perfectamente vinculante. *Colón Colón v. Mun. Arecibo,* 170 DPR 718, 730 (2007).

Ahora bien, ante el incumplimiento de una obligación bilateral, "el perjudicado puede *optar* entre exigir el cumplimiento de la obligación o su resolución". *Álvarez v. Rivera, supra*, pág. 19 (Énfasis suplido en el original). Sin embargo, cuando existe un cumplimiento parcial o defectuoso, en principio, se justifica la resolución. No obstante, no debe ser ejercicio en todas las situaciones, pues la buena fe en la contratación puede imponer alguna moderación a dicho resultado. *Álvarez v. Rivera, supra*, pág. 19. "*[Ú]nicamente si el cumplimiento parcial o defectuoso implica la frustración de la finalidad contractual para la parte perjudicada*

*procederá, entonces, la resolución del contrato". Álvarez v. Rivera, supra,* págs. 19-20 (Énfasis suplido en el original).

### III.

En el caso de marras, nos toca dirimir si el DACO erró al no determinar que la cancelación del convenio verbal por parte del Sr. Matos Nazario constituyó una resolución unilateral arbitraria; y, consecuentemente, si incidió al ordenar la devolución del dinero entregado por el Sr. Matos Nazario como parte de la contratación de los servicios del ingeniero Rivera Ayala.

A juicio del DACO, el ingeniero Rivera Ayala incumplió sustancialmente con el contrato justificando la cancelación del mismo por parte del Sr. Matos Nazario. Fundamentó lo anterior en que el ingeniero Rivera Ayala no le entregó al Sr. Matos Nazario el plano de segregación en formato alguno; no se comunicó ni intentó comunicarse con el Sr. Matos Nazario; no presentó factura sobre los alegados trabajos realizados ni brindó al Sr. Matos Nazario actualizaciones sobre el proyecto. Consecuentemente, la agencia administrativa ordenó la devolución de los $4,200.00.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no incurrió en ninguno de los señalamientos de error.

Según nuestro ordenamiento jurídico, cuando existe un cumplimiento parcial o defectuoso, en principio, se justifica la resolución. No obstante, no debe ser ejercicio en todas las situaciones, pues la buena fe en la contratación puede imponer alguna moderación a dicho resultado. *Álvarez v. Rivera, supra,* pág. 19. "*[Ú]nicamente si el cumplimiento parcial o defectuoso implica la frustración de la finalidad contractual para la parte perjudicada procederá, entonces, la resolución del contrato". Álvarez v. Rivera, supra,* págs. 19-20 (Énfasis suplido en el original).

En el presente caso, el Sr. Matos Nazario contrajo un contrato verbal con el ingeniero Rivera Ayala para segregar un predio de

terreno localizado en el Municipio de Cabo Rojo. En particular, el 7 de junio de 2024, el Sr. Matos Nazario le entregó un cheque al ingeniero Rivera Ayala por la cantidad $4,200.00,[7] correspondiente a un 50% de un total de $8,400.00. Sin embargo, el 26 de julio de 2024, el Sr. Matos Nazario cursó al ingeniero Rivera Ayala una carta por la que expuso que lo había llamado más de veinte (20) veces, empero no había logrado comunicarse con él.[8] Además, expuso haberle dejado mensajes en el teléfono y por escrito, pero no recibió respuesta. También sostuvo que el ingeniero Rivera Ayala tampoco le brindó detalle alguno respecto al plano de segregación. Por tal razón, el Sr. Matos Nazario notificó al ingeniero que "[e]sta carta es para informarle que el proyecto que habíamos planeado de segregación lo estoy cancelando".[9]

De un examen del expediente ante nos, no existe duda de que el plano de segregación carecía de tabla de medidas y fecha de elaboración.[10] Además, el ingeniero Rivera Ayala no presentó prueba de haberle brindado algún tipo de actualización sobre el proyecto. Tampoco presentó evidencia sobre las bitácoras, el desglose de horas ni la información alegadamente recopilada por el técnico de mensura y el ayudante de este último. Si fuera poco, el ingeniero Rivera Ayala no contestó los comunicados del Sr. Matos Nazario ni intentó comunicarse con este, luego de la entrega del cheque en cuestión.

Por tal razón, concluimos que la preparación incompleta del plano por parte del ingeniero Rivera Ayala, unido a la falta de comunicación de parte de este después de adquirir el cheque en cuestión, constituyó un incumplimiento defectuoso que afectó el convenio alcanzado con el Sr. Matos Nazario. Específicamente, ello

---

[7] *Íd.*, Anejo, 3, pág. 12.
[8] *Íd.*, pág. 16.
[9] *Íd.*
[10] *Íd.*, págs. 10-11.

implicó la desgracia de la notificación de la resolución del contrato por parte del Sr. Matos Nazario y la devolución del dinero, tal como resolvió el DACO.

Ahora bien, aunque, al amparo del Artículo 1158 del Código Civil del 2020, *supra*, sec. 9303, el Sr. Matos Nazario podía reclamar daños ante las actuaciones del ingeniero Rivera Ayala, no lo hizo, por lo que procedía la devolución de los $4,200.00, sin más.

En su consecuencia, el DACO no incidió en los señalamientos de error.

**IV.**

Por las razones discutidas anteriormente, resolvemos confirmar la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones