Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| GÉNESIS SECURITY SERVICES, INC.<br><br>**Parte recurrente**<br><br>v.<br><br>MUNICIPIO DE SAN LORENZO<br>(Junta de Subastas)<br><br>**Parte recurrida** | **TA2026RA00077** | **REVISIÓN ADMINISTRATIVA**<br>Procedente de la Junta de Subasta del Municipio de San Lorenzo<br><br>Caso Núm.:<br>**RFP 06-2025-2026**<br><br>Sobre:<br>Adquisición, Instalación y Mantenimiento de Cámaras Solares Fijas con Tecnología License Plate Reader |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 20 de marzo de 2026.

Comparece ante nos la parte recurrente, Génesis Security Services, Inc., en adelante, Génesis, mediante recurso de revisión judicial en el cual solicita que revoquemos la *Resolución* emitida el 13 de febrero de 2025 en la *Solicitud de Propuesta: RFP[1] Núm. 6, Serie 2025-2026 – Adquisición, instalación y mantenimiento de cámaras solares fijas con tecnología License Plate Reader* (RFP 6/2025-2026). En dicha determinación, la Junta de Subastas del Municipio Autónomo de San Lorenzo, en adelante, parte recurrida o Junta de Subastas, concluyó que AXON Enterprise, Inc., en adelante, AXON había presentado la mejor propuesta.

---

[1] El Art. 2.035 (d) de la Ley 107-2020, según enmendada, conocida como el Código Municipal de Puerto Rico, dispone el mecanismo de Solicitud de Propuestas y/o Solicitud de Propuestas Selladas, conocida en inglés como *Request for Proposal* (RFP). Este método de licitación se utiliza para la adquisición de bienes, obras y servicios no profesionales, en aquellos casos en que el proceso permite la negociación entre el oferente y el municipio durante la evaluación de las propuestas recibidas. 21 LPRA sec. 7211 (d).

Por los fundamentos que expondremos a continuación, *confirmamos* la resolución recurrida.

**I.**

El 15 de diciembre de 2025 la Junta de Subastas, publicó en el periódico *Primera Hora* un aviso de subasta mediante el cual anunció la celebración del proceso de RFP 6/2025-2026, titulada "Adquisición, instalación y mantenimiento de cámaras solares fijas con tecnología *License Plate Reader (LPR)* a ubicarse en diferentes puntos del Municipio de San Lorenzo".[2] En dicho anuncio la Junta de Subastas dispuso que la reunión pre-subasta se llevaría a cabo el 18 de diciembre de 2025, y que la fecha límite para entregar las propuestas sería el 22 de enero de 2026.[3]

Asimismo, se proporcionó un pliego de especificaciones que establecía las instrucciones y condiciones sobre el proceso de RFP 6/2025-2026.[4] En este, la Junta de Subastas informó los criterios que regirían la evaluación, negociación y adjudicación de la buena pro. En particular, se estableció que la Junta de Subastas evaluaría únicamente las propuestas responsivas conforme a una rúbrica previamente definida, y asignaría puntuaciones que determinarían el orden de negociación entre los proponentes.

Los criterios de evaluación incluían: (1) el cumplimiento con requisitos obligatorios bajo un sistema de "aprueba/falla"; (2) costo de materiales, equipo e instalación y configuración (20 puntos); (3) el costo de los servicios de mantenimiento (15 puntos); (4) la compatibilidad con el sistema tecnológico utilizado por la Policía Municipal (20 puntos); (4) el tiempo de entrega del proyecto (20 puntos); (5) la experiencia de licitador en proyectos similares (15

---

[2] Entrada 1 de SUMAC TA, apéndice 3.
[3] *Íd.,* apéndice 3.
[4] *Íd.,* apéndice 4.

puntos); y (6) las garantías ofrecidas (10 puntos), para un total máximo de cien (100) puntos.[5]

A base de dicha puntuación, los proponentes serían ordenados para fines de negociación, quedando a discreción de la Junta de Subastas determinar si procedía o no con dicha fase.

El 18 de diciembre de 2025 la Junta de Subastas llevó a cabo la reunión pre-subasta y presentó la primera enmienda con el propósito de proporcionar las coordenadas de los diferentes puntos de las cámaras a instalarse.[6] En dicha adenda reiteró que la entrega de propuestas debería efectuarse en o antes del 22 de enero de 2026.

El 22 de enero de 2026, Génesis entregó su propuesta para participar del proceso de RFP 6/2025-2026.[7]

El 4 de febrero de 2026, el Sr. Christian Carrasquillo Gómez, Director de Sistemas y Procedimientos del Municipio de San Lorenzo, en adelante, Sr. Carrasquillo Gómez, emitió un memorando explicativo dirigido a la Junta de Subastas, mediante el cual recomendó la adjudicación a AXON. En este señaló que la solución propuesta por AXON mejora las operaciones de seguridad pública al integrar la tecnología de lectura de tablillas (LPR) con el sistema existente de la Policía Municipal, particularmente a través de la plataforma "FUSUS Evidence", que permite unificar cámaras corporales, dispositivos y evidencia digital bajo protocolos de seguridad y cadena de custodia ya en uso. Además, destacó que dicha integración ampliaría las capacidades de vigilancia, análisis de datos e inteligencia artificial, facilitaría la identificación de vehículos y conductores, reduciría los tiempos de respuesta y fortalecería la toma de decisiones, concluyendo que AXON constituía

---

[5] Entrada 1 de SUMAC TA, pág. 20.
[6] *Íd.*, apéndice 5.
[7] *Íd.,* apéndice 6.

la alternativa más completa y eficiente para atender las necesidades del municipio.[8]

Mediante la *Resolución* emitida el 13 de febrero de 2026, la presidenta de la Junta de Subastas, Sra. Maritza Ortiz Ayala, suscribió y notificó la adjudicación la buena pro de la RFP 6/2025-2026 a AXON, tras evaluar las tres (3) propuestas sometidas conforme a los criterios establecidos en el pliego. La Junta de Subastas determinó que AXON cumplió sustancialmente con las especificaciones técnicas, operacionales y de integración tecnológica requeridas, e incluyó documentación técnica y capacidades verificables del sistema propuesto, por lo que obtuvo la puntuación más alta (90 puntos). En contraste, concluyó que las propuestas de Power Comm y Génesis no cumplieron con ciertos requisitos técnicos esenciales, en particular en cuanto a conectividad, parámetros de detención y validación técnica de los componentes, lo cual incidió de sus respectivas puntuaciones (70 y 75 puntos). A base de dicho análisis y conforme a la recomendación del Sr. Carrasquillo Gómez, la Junta de Subastas determinó que la propuesta de AXON resultaba la más ventajosa y conveniente para el interés público, por lo que adjudicó el contrato a dicha entidad.[9]

Posteriormente, del acta levantada el 19 de febrero de 2026 surge un mayor desglose de la evaluación técnica realizada por la Junta de Subastas. En dicho documento, la parte recurrida especificó los parámetros técnicos considerados para la adjudicación, particularmente en cuanto a los requisitos de velocidad y distancia en la lectura de tablillas. A esos efectos, indicó que la propuesta de Power Comm no cumplía con el parámetro mínimo de velocidad requerido, al alcanzar aproximadamente sesenta (60) millas por hora, mientras que la propuesta de Génesis

---

[8] Entrada 1 de SUMAC TA, apéndice 15, pág. 11-12.
[9] Entrada 3 de SUMAC TA, anejo 1.

presentaba un alcance de lectura inferior al requerido, al establecer una distancia aproximada de sesenta y cinco (65) pies frente al mínimo exigido.[10]

Asimismo, el acta refleja que la Junta de Subastas identificó ambigüedades o insuficiencias en la documentación técnica presentada por algunos licitadores en relación con la transmisión en vivo (live streaming), lo que motivó la consideración de solicitar información técnica adicional para atender dichas deficiencias. De igual forma, la Junta de Subastas amplió su evaluación respecto a la propuesta de AXON Enterprise, Inc., al señalar que esta cumplía con los parámetros de velocidad y distancia requeridos, evidenciaba compatibilidad con el sistema tecnológico de la Policía Municipal y presentaba documentación técnica organizada y detallada. Finalmente, el acta consignó que la determinación de adjudicar la buena pro no se fundamentó exclusivamente en el costo, sino en el cumplimiento integral de las especificaciones técnicas, operacionales y de compatibilidad tecnológica establecidas en el pliego.[11]

Inconforme con la determinación de la Junta de Subastas, el 23 de febrero de 2026, la parte recurrente presentó el recurso de autos, en el cual hace el siguiente señalamiento de error:

> **Erró la Junta de Subastas del MSL al: (A) Adjudicar "0" puntos a Génesis en aspectos de compatibilidad, (B) Adjudicar la propuesta a AXON proponente que no cumplió con la totalidad de los requisitos por lo que la puntuación adjudicada de 90 puntos no es justificable.**

(Mayúscula omitidas).

El 10 de marzo de 2026 la Junta de Subastas del Municipio Autónomo de San Lorenzo presentó su alegato en oposición a la Revisión Judicial. En síntesis, la parte recurrida, solicita que se

---

[10] Entrada 3 de SUMAC TA, anejo 2.
[11] *Íd.*, anejo 2.

confirme la adjudicación a AXON, al sostener que su determinación se basó en una evaluación razonable y conforme al pliego. Argumenta que AXON cumplió con los requisitos técnicos y operacionales, los cuales incluyen la compatibilidad con el sistema existente de la Policía Municipal, mientras que la propuesta de Génesis presentó deficiencias en dicho aspecto. Asimismo, invoca la deferencia que merecen las determinaciones administrativas, por lo que no procede su revocación.

Con el beneficio de la posición de ambas partes, nos encontramos en posición de resolver.

## II.

### A. Código Municipal de Puerto Rico de 2020

La intitulada Ley 107 del 13 de agosto de 2020, según enmendada, 21 LPRA sec. 7001-8351., adoptó el *Código Municipal de Puerto Rico*, en adelante, Código Municipal, derogando, a su vez, la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81-1991, 21 LPRA sec. 4001, *et seq.* (derogada). Dicho Código "[d]eclara política pública proveer a los municipios de aquellos poderes y facultades necesarias para que puedan asumir su función fundamental a favor del desarrollo social y económico de sus jurisdicciones". A esos fines, el Capítulo V del Libro II del Código Municipal establece la facultad de las Juntas de Subastas de los municipios para entender y adjudicar todas las subastas que se requieran por ley, ordenanza o reglamentos. Art. 2.040, 21 LPRA sec. 7216. Como norma general, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG regula los procedimientos de subastas administrativas. Ley Núm. 38-2017, 3 LPRA sec. 9601, *et seq.* Sin embargo, las subastas que se adjudican por una Junta de Subastas Municipal están reguladas por el Código Municipal, y el Reglamento para la Administración Municipal 2016, Núm. 8873 (Reglamento Núm.

8873). Estas normas también regulan el derecho de revisión judicial de los licitadores o participantes. *Puerto Rico Eco Park, Inc. v. Municipio de Yauco*, 202 DPR 525, 534 (2019).

Así, en nuestro ordenamiento jurídico, queda a discreción de cada Municipio, como entidad con el conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus propias subastas. *AEE v. Maxon*, 163 DPR 434, 440 (2004). Sin embargo, existen unos criterios básicos que deben ser respetados.

El Tribunal Supremo de Puerto Rico ha expresado que el objetivo fundamental de un procedimiento de subasta es proteger el erario del Estado mediante la adquisición de servicios de calidad para el Gobierno al mejor precio posible. *ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 678 (2018). De igual forma, propenden a que el Gobierno lleve a cabo sus funciones como comprador de una forma eficiente y honesta, y al margen del favoritismo, dispendio, extravagancia y descuido en el otorgamiento de los contratos. *Transporte Rodríguez v. Jta. de Subastas*, 194 DPR 711, 717 (2016); *Aluma Const. v. AAA*, 182 DPR 776, 783 (2011).

Conforme a lo anterior, en el inciso (a) del Artículo 2.040 del Código Municipal, *supra*, se indica que las adjudicaciones se harán:

> [T]omando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega **la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio** y cualesquiera otras condiciones que se hayan incluido en el pliego de subastas". (Énfasis suplido).

El inciso citado dispone, de igual manera, que la Junta no está obligada a adjudicar la subasta al postor más bajo, si con ello "se beneficia el interés público". *Íd.* En adición, establece que si la Junta otorga la subasta a un licitador que no sea el menor postor "deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación". *Íd.*

Por su parte, la Sección 11 del Reglamento Núm. 8873 dispone que, como norma general de adjudicación, las subastas se adjudicarán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento con los siguientes requisitos:

(a) Que cumpla con los requisitos y condiciones de los pliegos de especificaciones.
(b) Que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.

De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoria futura. Capítulo VIII, Parte II, Sec. 11., págs.110-111.

En cuanto a la adjudicación de la *buena pro*, la Sección 10 del Reglamento Núm. 8873, establece que la Junta de Subastas tendrá que determinar las ofertas susceptibles de ser consideradas para la adjudicación, tomando como guía las normas establecidas en el Reglamento, así como en la información del Acta de Apertura y el Informe del Recaudador.

Además, en la precitada Sección 10 del Reglamento Núm. 8873, se añade que:

Luego de hacer esa determinación preliminar, la Junta procederá a verificar en las ofertas susceptibles de ser evaluadas, cuáles han cumplido con las especificaciones y condiciones solicitadas en la subasta. Cap. VIII, Parte II, Sec. 10.

A tono con lo antes dicho, y relativo a los procesos administrativos de Subastas, un licitador o participante de una Subasta Formal o un Requerimiento de Propuestas ("Request for Proposal") puede cuestionar mediante revisión judicial la adjudicación de una subasta, bajo el mismo principio de la deferencia a las agencias administrativas. *Puerto Rico Eco Park, Inc. v. Municipio de Yauco,* supra, pág. 532-533, citando *R & B Power v. ELA,* 170 DPR 606, 624 (2007).

### B. Revisión judicial de subastas

La revisión de las subastas gubernamentales se rige por principios similares a los que gobiernan la revisión de los procedimientos celebrados ante las agencias administrativas. *St. James Sec. v. AEE,* 213 DPR 366, 370 (2023); *Maranello et al. v. O.A.T.,* 186 DPR 180, 793 (2012). Cónsono con ello, el Tribunal Supremo ha expresado que las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables. *Aut. Carreteras v. CD Builders, Inc.,* 177 DPR 398, 408 (2009); *Caribbean Communications v. Pol. de P.R.,* 176 DPR 978, 1006 (2009). Ello responde a que la agencia posee una vasta experiencia y especialización que la coloca en mejor posición que el foro judicial para seleccionar el postor que más convenga al interés público. *Transp. Sonell v. Jta Subastas ACT,* 214 DPR 633, 648 (2024); *Maranello et al. v. O.A.T.,* supra, pág. 792.

Dado que la adjudicación de las subastas gubernamentales conlleva el desembolso de fondos del erario, dichos procedimientos están revestidos de un gran interés público, "pues busca promover la inversión adecuada, responsable y eficiente de los recursos del Estado". *Transp. Sonell v. Jta Subastas ACT,* supra; *Super Asphalt v. AFI,* 206 DPR 803, 820 (2021); *Caribbean Communications v. Pol. de P.R.,* supra; *Costa Azul v. Comisión,* 170 DPR 847, 854. (2007); *A.E.E. v. M AXON,* 163 DPR 434, 438-39 (2004). Por ello, nuestro Máximo Foro ha expresado que "la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del pueblo de Puerto Rico". *Caribbean Communications v. Pol. de P.R.,* supra; *Cordero Vélez v. Mun. de Guánica,* 170 DPR 237, 245 (2007). El objetivo fundamental de las subastas

gubernamentales es proteger al erario mediante la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno y al mejor precio posible. *Super Asphalt v. AFI,* supra, pág. 821. Del mismo modo, procura establecer un esquema que asegure la competencia equitativa y transparente entre los licitadores, evite la corrupción, el favoritismo, y minimice los riesgos de incumplimiento. *Sonell Transit Service v. Junta de Subasta*, 2025 TSPR 85, 216 DPR ___ (2025) *Mun. Aguada v. W. Construction Y Recovery Finance*, 214 DPR 432, 453 (2024); *Transp. Sonell, v. Jta Subastas ACT*, supra; *ECA Gen. Contract v. Mun. Mayagüez,* 200 DPR 665, 672 (2018).

Resulta importante apuntalar que las agencias gozan de amplia discreción en la evaluación de las distintas propuestas sometidas en la licitación de bienes y servicios, y adjudicar las mismas a favor del licitador que se ajusta mejor a las necesidades particulares, tanto de la agencia como del interés público en general. *St. James Sec. v. AEE,* supra; *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 349 (2016). Así, se ha admitido que la selección de un proveedor sobre otros puede "conllevar decisiones que descansen, **no en criterios estrictamente matemáticos**, sino en una valoración de la tecnología, los recursos humanos con que cuenta el proveedor, a la luz de las necesidades presentes y futuras de la agencia". *A.E.E. v. M AXON*, 163 DPR 434, 439 (2004). (Énfasis suplido). Bien lo ha dicho nuestro Tribunal Supremo, cuando estableció que "el hecho de que un licitador haga la propuesta más baja no obliga al organismo público a adjudicar la subasta a dicho licitador". *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 786 (2006). Esto, ya que se tienen que considerar otras variantes, como el interés público, y "la necesidad de obras bien realizadas, que garanticen ganancias y no pérdidas". *Id.* Además, ha sido

contundente en que "ningún postor tiene un derecho adquirido" al participar de una subasta *Id.*

Ahora bien, una vez es adjudicada la *buena pro,* los tribunales no deben sustituir el criterio de la agencia o junta concernida, excepto si se demuestra que la decisión se tomó de forma arbitraria o caprichosa, o mediando fraude o mala fe. *Transp. Sonell v. Jta Subastas ACT,* supra; *CD Builders v. Mun. Las Piedras,* supra, pág. 349; *Caribbean Communications v. Pol. de P.R.,* supra, pág. 1006. En ausencia de estos elementos, "ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público." *Great American Indemnity Co. v. Gobierno de la Capital,* 59 DPR 911, 916 (1942), citado en *Maranello et al. v. O.A.T.,* supra, pág. 793. Véase, además, *Transp. Sonell v. Jta Subastas ACT,* supra; *St. James Sec. v. AEE,* supra. En estos casos, la determinación de la agencia será sostenida si cumple con el criterio de razonabilidad. *Maranello et al. v. O.A.T.,* supra. Es decir, el tribunal debe dirimir si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituya un abuso de discreción. *St. James Sec. v. AEE,* supra; *Super Asphalt v. AFI,* supra, pág. 820.

Como es sabido, las determinaciones de agencias administrativas gozan de una presunción de corrección. *Transp. Sonell v. Jta Subastas ACT,* supra; *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 114 (2023); *EG v. Martínez Giraud,* 210 DPR 79, 89 (2022); *Super Asphalt v. AFI y otro,* supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *Mun. de San Juan v. CRIM,* 178 DPR 163, 175 (2010). Por todo lo cual, la parte que impugne la adjudicación de una subasta debe demostrar "que se tomó de forma arbitraria, caprichosa o mediando fraude o mala fe". *Transp. Sonell v. Jta Subastas ACT,* supra; *Caribbean*

*Communications v. Pol. de P.R.,* supra, pág. 1006; *Empresas Toledo v. Junta de Subastas,* supra, pág. 783.

Finalmente, cuando una parte se propone retar las determinaciones de una agencia, nuestro ordenamiento jurídico requiere que este debe demostrar que las mismas no están correctamente fundamentadas. Es por esto, que, deberá ofrecerle al foro revisor prueba que aminore o menoscabe la evidencia que obre en el expediente administrativo. *Otero Mercado v. Toyota de Puerto Rico,* 163 DPR 716, 728 (2005).

**III.**

En su recurso. Génesis sostiene que la Junta de Subastas de San Lorenzo erró al adjudicar la RFP 6/2025-2026. En particular, alega que la Junta de Subastas actuó de forma irrazonable al asignarle una puntuación de cero (0) en el renglón de compatibilidad, a pesar de que, según afirma, su propuesta cumplía cabalmente con dicho criterio mediante la inclusión de información técnica suficiente. Asimismo, plantea que la adjudicación a favor de AXON es improcedente, toda vez que esta última no cumplió con la totalidad de los requisitos establecidos en el pliego, especialmente en lo relativo a la presentación de literatura técnica, por lo que la puntuación de noventa (90) puntos otorgada carece de justificación. A base de lo anterior, la parte recurrente alega que su propuesta constituía la más ventajosa y que la determinación de la Junta de Subastas debe ser revocada. *No le asiste la razón.*

Del expediente surge que la evaluación de las propuestas se realizó conforme a los criterios previamente establecidos en el pliego, los cuales otorgaban un peso significativo a la compatibilidad tecnológica del sistema propuesto con la infraestructura existente de la Policía Municipal de San Lorenzo. En ese contexto, la Junta de Subastas, como ente especializado con pericia técnica, se encontraba en mejor posición para determinar si la información

presentada por los licitadores satisfacía dicho requisito. La mera discrepancia de Génesis con la puntuación otorgada no es suficiente para derrotar la presunción de corrección que cobija la actuación de la Junta de Subastas. Más aún, el récord refleja que la parte recurrida evaluó las propuestas conforme a su contenido y a la evidencia sometida, por lo que no se demostró que la asignación de dicha puntuación haya sido producto de arbitrariedad o capricho.

Por otra parte, tampoco tiene méritos la alegación de Génesis en cuanto a que AXON incumplió con los requisitos del pliego, ni que la puntuación adjudicada resulte injustificable. Como es sabido, en los procesos de RFP, la adjudicación no descansa exclusivamente en el cumplimiento literal o en el precio más bajo, sino en una evaluación integral que considere múltiples factores tales como la calidad del producto o servicio, la capacidad técnica, la experiencia y el beneficio al interés público. En ese ejercicio, la Junta de Subastas goza de amplia discreción para ponderar las propuestas a la luz de las necesidades particulares del Municipio de San Lorenzo. Del expediente no surge evidencia que demuestre que AXON resultara favorecida en contravención a los requisitos esenciales del pliego, ni que la Junta de Subastas haya dejado de considerar los criterios obligatorios en su evaluación. Por el contrario, la determinación impugnada responde a una valoración técnica y cualitativa dentro del marco de discreción reconocido a estos organismos.

En ese sentido, el hecho de que la propuesta de Génesis resultara más económica no obliga a la Junta de Subastas a adjudicarle la *buena pro*, particularmente cuando el esquema de evaluación contemplaba otros factores determinantes. La función de este foro no es sustituir el criterio de la Junta de Subastas por el propio, sino examinar si la determinación está apoyada en evidencia sustancial y si responde a un ejercicio razonable de la discreción

conferida por ley. En ausencia de prueba que demuestre arbitrariedad, fraude, mala fe o una actuación irrazonable, procede sostener la decisión de la Junta.

En consecuencia, concluimos que la Junta de Subastas actuó dentro del ámbito de su discreción y conforme a derecho, por lo que no se cometió el error señalado por Génesis.

**IV.**

Por los fundamentos antes expuestos, se ***confirma*** la *Resolución,* emitida el 13 de febrero de 2025 por la Junta de Subastas del Municipio de San Lorenzo.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones